**ERIE INSURANCE EXCHANGE,**
**Appellant**

v.

**Donna M. LARRIMORE and Charles**
**Larrimore, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 2, 2009.

Filed Dec. 8, 2009.

Karl L. Stefan, King of Prussia, for appellant.

Steven J. Margolis, Bethlehem, for appellees.

BEFORE: FORD ELLIOTT, P.J., PANELLA, and FREEDBERG, JJ.

OPINION BY FREEDBERG, J.:

¶ 1 In this declaratory judgment action involving a coverage question under the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. §§ 1701 *et seq.*, Erie Insurance Exchange ("Erie") appeals from the Order granting summary judgment in favor of Donna and Charles Larrimore and against Erie. We affirm.

¶ 2 The factual and procedural history may be summarized as follows. On April 24, 2000, Donna Larrimore, then unmarried and known as Donna Green, signed an eight page application for motor vehicle insurance. The application was prepared by an insurance agency representative following a telephone conversation with Donna Larrimore. There is a lack of any definitive independent recollection as to the specifics of any conversation regarding particular coverage amounts. The second page of the application set forth that the coverage applied for included the following: Bodily Injury Liability coverage in the amount of $300,000.00 per person and $300,000.00 per accident; Uninsured Motorist ("UM") Bodily Injury coverage in the amount of $15,000.00 per person and $30,000.00 per accident, unstacked; and Underinsured Motorist ("UIM") Bodily Injury coverage in the amount of $15,000.00 per person and $30,000.00 per accident, unstacked. This coverage limits information was inserted in the application by the agent before the application was presented to Donna Larrimore for signature. The eighth page of the application contained the following language immediately preceding the applicant's signature:

I certify that I have given true and complete answers to the questions in this application. I also certify that I have been offered alternative coverage limits and those listed on this application reflect my choices.

¶ 3 On the same day she signed the application, Larrimore also signed the required "Important Notice" called for under § 1791 of the MVFRL. This single page form set forth, in pertinent part, the following:

IMPORTANT NOTICE

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you . . .:

\* \* \* \* \* \*

(6) Uninsured, Underinsured and Bodily Injury Liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident. . . .

\* \* \* \* \* \*

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

YOUR SIGNATURE ON THIS NOTICE OR YOUR PAYMENT OF ANY RENEWAL PREMIUM EVIDENCES YOUR ACTUAL KNOWLEDGE AND UNDERSTANDING OF THE AVAILABILITY OF THESE BENEFITS AND LIMITS AS WELL AS THE BENEFITS AND LIMITS YOU HAVE SELECTED.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

If you do not understand any of the provisions contained in this notice, con-

tact your agent or company before you sign.

¶ 4 At the time the application and § 1791 "Important Notice" were signed by Larrimore, Erie employed a special form UF–2047 titled "Request for Lower Limits of Underinsured Motorist Coverage" for an insured to specifically request limits of UIM coverage in an amount less than the limits of bodily injury liability coverage, and to insert the amount of UIM coverage sought. This form contained the following language:

> By signing this form, I am requesting for myself and members of my household underinsured motorist coverage in an amount less than the limits of my bodily injury liability coverage. I am knowingly and voluntarily rejecting underinsured motorist coverage in an amount equal to my bodily injury liability limits. Rather, I am requesting the following amount of underinsured motorist coverage:

¶ 5 The form then contained blank spaces to insert the amount of UIM coverage sought. Once completed this form was to be signed and dated by the insured. At the same time, Erie employed a similarly titled and styled special form UF–2044 for an insured to request limits of UM coverage in an amount less than the limits of bodily injury liability coverage. In the present case, Erie admits that it is not in possession of any such form UF–2047 or UF–2044 signed by Donna Larrimore.

¶ 6 Erie issued an automobile insurance policy to Donna Larrimore on April 24, 2000. The policy was later amended to add her husband Charles Larrimore as a named insured, further amended to include a second vehicle, and still further amended to stack the UM and UIM coverage for two vehicles in the same amounts as reflected on the initial application.

¶ 7 On July 25, 2006, Donna Larrimore was injured in an automobile accident. Her bodily injury claim against the third party tortfeasor was settled, and she thereafter undertook pursuit of additional compensation through the UIM coverage in her policy with Erie. Taking the position that she never requested limits of UIM coverage in an amount less than the limits of her bodily injury liability coverage, Larrimore sought UIM benefits totaling $600,000.00, representing an amount equal to her bodily injury limits of $300,000.00, stacked for two vehicles.

¶ 8 On June 22, 2007, Erie filed a declaratory judgment action claiming that Larrimore's UIM coverage was limited to the amount of UIM coverage reflected on the initial application, i.e., $15,000.00 per person and $30,000.00 per accident, though now concededly stacked for two vehicles, for a total of $30,000.00. Erie and Larrimore ultimately filed motions for summary judgment.

¶ 9 By Memorandum Opinion and Order entered January 13, 2009, the Honorable Roger Nanovic, President Judge, in a thorough and well-reasoned decision, denied Erie's motion for summary judgment and granted the Larrimore motion for summary judgment, entering judgment in favor of Larrimore and against Erie. The trial court specifically ordered that the UIM coverage limits were deemed equal to the bodily injury liability coverage limits, i.e., $600,000.00, representing an amount equal to the bodily injury limits of $300,000.00, stacked for two vehicles. Erie filed a motion for reconsideration which was denied by Order entered February 9, 2009. Erie then filed this appeal. The trial court ordered Erie to file a statement of errors complained of on appeal pursuant to Rule 1925 of the Pennsylvania Rules of Appellate Procedure, and Erie complied. The trial court thereafter issued a Rule

1925 Opinion, largely incorporating its earlier Memorandum Opinion, but also finding that two issues identified by Erie in its Rule 1925 statement were not properly preserved and were therefore waived.

¶ 10 On appeal, Erie sets for the following statement of questions involved on appeal:

Did the lower court err in finding that the Application for Insurance executed by Donna M. Larrimore (then Donna M. Green) on April 24, 2000, did not constitute a valid Section 1734 written request for policy limits of UM Bodily Injury Coverage and UIM Bodily Injury Coverage in amounts less than the limits of Bodily Injury Liability Coverage under Erie Insurance Exchange Policy No. Q04–2407916?

Did the lower court err in holding that Section 1734's requirement for a written request for limits of Uninsured Motorists/Underinsured Motorists Coverage less than those mandated by Section 1731 is to be narrowly and strictly construed despite the dominant and overarching public policy underpinning the MVFRL of cost containment, such that Section 1734 should not be narrowly and strictly construed?

Did the lower court err in not finding that the receipt by Donna M. Larrimore of quarterly renewal notices, and her payment of lower premiums over six a (6) year period prior to the accident, demonstrated Donna M. Larrimore's actual knowledge of and acquiescence to her selection of UM Bodily Injury Coverage and UIM Bodily Injury Coverage with limits of protection that were lower than her Bodily Injury Liability Coverage under Erie Insurance Exchange Policy No. Q04–2407916?

Did the lower court err in failing to follow *Blood v. Old Guard Insurance Company*, 594 Pa. [151] 156, 934 A.2d 1218 (2007) and *Salazar v. Allstate Insurance Company*, 549 Pa. 658, 702 A.2d 1038 (1997), by fashioning a remedy reforming the UM Bodily Injury Coverage and UIM Bodily Injury Coverage Limits of Protection under Erie Insurance Exchange Policy No. Q04–2407916 such that they were deemed to be equal to the Bodily Injury Liability Coverage Limits, for what the Court found to be Erie's violation of Section 1734 of the Pennsylvania Motor Vehicle Financial Responsibility Law, when no such remedy exists under the MVFRL?

Brief of Erie at 3.

¶ 11 The present appeal requires review of a grant of summary judgment. The standard governing our review of an order granting a motion for summary judgment is as follows:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*McIntyre Square Associates v. Evans*, 827 A.2d 446, 451 n. 6 (Pa.Super.2003).

¶ 12 Regarding the availability, scope and amount of UM and UIM coverage, § 1731 of the MVFRL provides, in pertinent part, as follows:

(a) **Mandatory offering.**—No motor vehicle liability insurance policy shall be

delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

75 Pa.C.S.A. § 1731(a).

¶ 13 Regarding a request for lower limits of UM and UIM coverage, § 1734 of the MVFRL provides as follows:

A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

75 Pa.C.S.A. § 1734.

¶ 14 The Supreme Court of Pennsylvania has observed that § 1731 represents "a simple statement whose plain meaning is apparent from its language. It mandates that an insurance company cannot issue a policy in the Commonwealth of Pennsylvania unless it provides UM/UIM coverage equal to the bodily injury liability coverage, except as provided in § 1734." *Blood v. Old Guard Insurance Company*, 594 Pa. 151, 934 A.2d 1218, 1226 (2007), *quoting Nationwide Insurance Company v. Resseguie*, 980 F.2d 226, 230 (3d Cir.1992). Similarly finding the language and intention of § 1734 plain and clear, the Supreme Court of Pennsylvania observed that under § 1734 "a named insured may lower her statutorily provided UIM coverage limits by requesting in writing of her insurer to do so. The insurance company's obligation to *issue* a policy with [UM/UIM] coverage in an amount equal to the policy's bodily injury liability coverage is not re-

lieved unless it has received such a written request." *Blood*, 934 A.2d at 1226, *quoting Resseguie*, 980 F.2d at 231 (emphasis original).

¶ 15 Although no specific form is required or prescribed by the MVFRL, to be a valid and enforceable written request under § 1734, the writing must: (1) "manifest the insured's desire to purchase uninsured and underinsured coverage in amounts equal to or less than the bodily injury limits"; (2) be signed by the named insured; and (3) "include an express designation of the amount of uninsured and underinsured coverage requested." *Hartford Insurance Company v. O'Mara*, 907 A.2d 589, 602–603 (Pa.Super.2006) (*en banc*), *citing Lewis v. Erie Insurance Exchange*, 568 Pa. 105, 793 A.2d 143, 153 (2002).

¶ 16 Principally, Erie contends that the application and the § 1791 "Important Notice" together in conjunction constituted a valid and enforceable written request under § 1734. Part of Erie's argument in this regard is that the trial court added an element to the criteria for determining whether there was a valid and enforceable writing as required by § 1734. In discussing the test, the trial court stated that "[i]n order for the writing to manifest the insured's desire to purchase reduced coverage, it must be apparent from the face of the writing that a selection process has in fact been engaged in by the insured and that the amount of coverage selected represents a choice by the insured." Trial Court Opinion, 1/13/09 at 12.

¶ 17 The Memorandum Opinion of the trial court, read in its entirety, belies any suggestion that the trial court somehow added to the test and changed the law. The trial court's discussion on this point clearly represents an accurate restatement of established law and does not add to the

test. Finding no error in the trial court's recitation of the correct test, we will review the trial court's application of the test to the facts presented.

¶ 18 With the statutory framework of § 1731 and § 1734 of the MVFRL in place, we are mindful that where a § 1791 "Important Notice" is properly afforded, as it was here, then "[i]t shall be presumed that the insured has been advised of the benefits and limits available . . . and no other notice or rejection shall be required". 75 Pa.C.S.A. § 1791. This presumption is not determinative of this case, however, unless the insured actually selects coverage in writing in conformity with § 1734. *Motorists Insurance Companies v. Emig*, 444 Pa.Super. 524, 664 A.2d 559, 569 (1995). The ultimate dispositive question, therefore, is whether Donna Larrimore requested in writing lower UIM coverage in conformity with § 1734.

¶ 19 This Court has observed that a signature on an insurance application "merely evidences the insureds [sic] acceptance of the policy . . . ," and "cannot amount to a statutorily enforceable waiver of uninsured/underinsured motorist coverage limits equal to bodily injury limits." *Emig*, 664 A.2d at 565 (citation omitted). Nor does the signature on the application combined with the § 1791 "Important Notice" operate to satisfy the written request for lower limits requirement of § 1734 as "Section 1791 does not provide a mechanism for requesting UM/UIM coverages." *Emig*, 664 A.2d at 565.

¶ 20 The reasoning of this Court's decision in *Emig* is dispositive. The issue presented in *Emig* was whether the insured's signature on a policy change request form indicating lower UM and UIM coverages, together with receipt of the statutory "Important Notice", constituted a waiver of UM and UIM coverages equal to the bodily liability limits of the policy.

*Emig*, 664 A.2d at 560. In her initial application, the insured requested and received bodily injury liability coverage of $50,000.00 per person and $100,000.00 per accident. In that application, the insured also requested and received reduced UM and UIM coverages in the amount of $15,000.00 per person and $30,000.00 per accident. The insured signed a "waiver/acknowledgement" of her right to UM and UIM coverages equal to the amount of the bodily injury liability limits. *Emig*, 664 A.2d at 561.

¶ 21 Thereafter, the insured requested increased UM and UIM limits of $50,000.00 per person and $100,000.00 per accident. On renewal of the policy, the insured received a declarations page showing the increased UM and UIM coverages, now equal to her bodily injury liability limits. *Emig*, 664 A.2d at 561. Still later, the insured met with the insurance company's agent to add coverage for a newly purchased vehicle, as well as to determine how she could reduce her premiums with the added vehicle. As a result of the discussion with the agent, the insured signed a policy change request form. *Emig*, 664 A.2d at 561.

¶ 22 The policy change request form contained a section entitled "ADD COVERAGE SAME AS ON POLICY". Across from this heading was the designation "UM/UIM BI". Underneath this designation was a blank box and two blank lines, with the first line on top, then a slash, and the second line underneath the first. Beside the top line was a box which was to be filled in with an "x" if the insured desired UM and UIM limits equal to the bodily injury liability limits. The blank lines were to be filled in with the amount of UM/UIM coverages if different from the amount of coverage for bodily injury liability. *Emig*, 664 A.2d at 564. As to this section of the form, it was noted

that the instructions stated: "X Box (under each coverage) for same limit as policy or show new limit. . . ." *Emig,* 664 A.2d at 564. As such, the blank box beside the blank lines in the "UM/UIM BI" portion of that section was to be "x'ed" only if the insured desired UM and UIM coverages equal to the bodily injury liability coverage. *Emig,* 664 A.2d at 564. The amounts of UM and UIM coverages were to be filled in on the blank lines if these coverages were to be different from the bodily injury liability coverage. *Emig,* 664 A.2d at 564. This Court observed that "[t]he purpose of this section is *not to request* reduction of UM/UIM coverages. It does not contain any language therein indicating that the applicant is *requesting* a reduction. It also does not contain a signature line, nor is the section designed to provide for one." *Emig,* 664 A.2d at 564 (emphasis original).

¶ 23 On this section of the policy change request form the UM/UIM box was "x'ed" and the numbers "15" and "30", respectively, were written in the blank spaces. The "UM/UIM BI" box was circled and the word "Reduce" was written in the box. The agent was the person who filled out the policy change request form, "x'ed" the "UM/UIM BI" box, filled in the blanks with the numbers "15" and "30", circled the "UM/UIM BI" box and wrote "Reduce". *Emig,* 664 A.2d at 564.

¶ 24 The policy change request form contained another, separate section. This section was entitled "UM/UIM REJECTION OR REDUCTION", and provided the following:

UM/UIM REJECTION OR REDUCTION If an option listed below is requested, the correct block must be checked and the insured must sign in the space provided.

\*　　\*　　\*　　\*　　\*　　\*

PA [Blank Box] I request an Uninsured Motorists [sic] coverage limit of $___ /$___ to be effective in my policy.

[Blank Box] I request an Underinsured Motorists [sic] coverage limit of $___ /$___ to be effective in my policy.

I understand that the limit(s) requested are lower than the Bodily injury Liability limit afforded by this policy.

\*　　\*　　\*　　\*　　\*　　\*

Applicant's Signature–UM/UIM Rejection X_____

¶ 25 It was noted that this separate section of the form "does contain language indicating a request for reduction of UM/UIM coverages, and the instructions accompanying that section provide that the blank boxes pertaining to each of UM/UIM coverages are to be checked and the amounts for each coverage are to be filled in on the blank spaces." *Emig,* 664 A.2d at 565. It was also noted that the instructions required that the insured sign on the blank signature line provided. *Emig,* 664 A.2d at 565. Ultimately, this separate section of the policy change request form was left entirely blank; no boxes were checked, no amounts were filled in, and the insured did not sign on the line specifically provided, but the insured did sign at the end of the policy change request form. *Emig,* 664 A.2d at 564.

¶ 26 On appeal, this Court undertook to "determine whether [the insured's] signature at the end of the policy change request form on which [the company's] agent indicated reduced amounts of UM/UIM coverages or the act of [the company's] agent in filling in the UM/UIM coverages and writing "Reduce" thereon compensated for or is sufficient to fulfill the mandate of a request in writing pursuant to Section 1734." *Emig,* 664 A.2d at 565. This Court concluded "that the requirement of a request in writing pursuant to Section 1734

has not been satisfied and that, therefore, the trial court properly refused to apply the conclusive presumption of Section 1791." *Emig*, 664 A.2d at 565. This Court rejected the argument that the "Important Notice" of Section 1791 somehow operated "as a blanket or catch-all waiver and, coupled with [the insured's] signature at the end of the policy request change form, supersedes all other statutory requirements and all other waiver provisions included in an insurance application or change request form." *Emig*, 664 A.2d at 567 (footnote omitted). In so doing, this Court held that "in order for the conclusive presumption of Section 1791 to be effective, an insured must have actually selected coverage(s), and the selection process must first be in conformity with the law, *i.e.*, in this case, with Section 1734." *Emig*, 664 A.2d at 569 (footnote omitted).

¶ 27 It is clear that to conform with § 1734, the written request must be signed by the insured and must contain an express designation of the amount of coverage requested, all manifesting the insured's desire to purchase coverage in amounts less than the bodily injury limits. *O'Mara*, 907 A.2d at 602–603, *citing Lewis*, 793 A.2d at 153. "It is a very simple, clear-cut rule for the insurance company to follow—to lower the limits it must insist on a written authorization signed by the named insured." *Emig*, 664 A.2d at 564, *quoting Resseguie*, 980 F.2d at 232. The simplicity of the rule is, we believe, evidenced by the fact that Erie itself created just such a written authorization; a special form UF–2047 titled "Request for Lower Limits of Underinsured Motorist Coverage", designed for an insured to specifically request limits of UIM coverage in an amount less than the limits of bodily injury liability coverage, and to insert the amount of UIM coverage sought, all signed and dated by the insured. In the present case,

Erie admits that it is not in possession of that form signed by Larrimore. We find Erie's creation and use of this form significant, and we also deem it to be the functional equivalent of an admission that something more than a signed application and signed § 1791 "Important Notice" is needed to comply with the written request for lower coverage limits requirement of § 1734.

¶ 28 Notwithstanding Erie's contentions to the contrary, the § 1734 written request for lower coverage limits requirement must be construed strictly. *See Resseguie*, 980 F.2d at 232; *Blood*, 934 A.2d at 1226. Overall, "[t]he MVFRL, of which Sections 1734 and 1791 are a part, is to be construed liberally in order to promote justice and to give effect to its objects." *Emig*, 664 A.2d at 566 (citations and footnote omitted). "One of the objects of the MVFRL to be effected by this liberal construction is affording the injured claimant the greatest possible coverage." *Emig*, 664 A.2d at 566 (citations omitted). We must remain mindful that "[i]n close or doubtful cases, we must interpret the intent of the legislature and the language of insurance policies to favor coverage for the insured." *Emig*, 664 A.2d at 566 (citations omitted).

¶ 29 In the present case, the record evidence simply does not establish that Donna Larrimore gave Erie her written authorization to secure UIM coverages in an amount less than the bodily injury liability limits. Simply put, Donna Larrimore never selected lower UIM coverage because she never made a written request as required by § 1734. Although presented with the § 1791 "Important Notice" information outlining the alternatives, Donna Larrimore did not make a selection of one alternative over the others. In *Emig*, this Court said:

At the risk of being redundant, but for the sake of clarity, we repeat: [The insured] never selected lower UM/UIM coverages because she did not request the same in writing as required by Section 1734. If she did request reduced UM/UIM coverages, her request is ineffective for the same reason. The absence of a written request by [the insured] pursuant to Section 1734, of course, would preclude her knowledge and understanding of lower UM/UIM coverages for the purpose of Section 1791. She could not be presumed to have knowledge and understanding of that which she never selected in accordance with law.

The "Important Notice" is merely a notice to [the insured] that she must be offered certain benefits in certain amounts which she may accept, reject or reduce. Thus, Section 1791 does not provide the means for selection, rejection or reduction of these offered benefits. This, instead, is provided for by the legislature in Subchapter "C" [containing § 1734]. The "Important Notice" merely informs [the insured] that she is presumed to know and understand those benefits offered *and* those benefits which she has selected in conformity with law, *i.e.*, in this case, Section 1734. If [the insured] has not selected reduced UM/UIM coverages in conformity with Section 1734, she cannot be presumed to have knowledge and understanding of them. If Section 1791 were to serve the same legislative purpose as does Section 1734, the latter would amount to mere surplusage, a result not intended by the legislature. Both provisions must remain definite and certain. Simply stated, the two statutes are found in two different subchapters because each statute serves a different purpose and relates to a differ-

ent aspect of motor vehicle financial responsibility.

*Emig*, 664 A.2d at 569 (emphasis original) (citation omitted).

¶ 30 On this record, Donna Larrimore did nothing more than sign an application, evidencing acceptance of the policy, and sign the § 1791 "Important Notice", evidencing really very little because it afforded no mechanism for requesting UIM coverage. Consequently, the trial court did not err in concluding that there was no valid and enforceable written request under § 1734.

¶ 31 This Court's *en banc* holding in *O'Mara*, 907 A.2d at 602–603, does not compel any different result on this point, nor does it undermine our reliance upon *Emig*. In *O'Mara*, it was determined that the language of a "Coverage Options Form" in combination with a handwritten "X" next to the option "Minimum amount available ($15,000 per person/$30,000 per accident)" and the signature of the insured on that very form all, taken as a whole, served to satisfy the written request for lower limits requirement of § 1734. *O'Mara*, 907 A.2d at 603–604. In the present case we have no such evidence of an actual selection of UM and UIM coverages in an amount less than the bodily injury liability limits.

¶ 32 Our *en banc* decision in *O'Mara* cites the Supreme Court's decision in *Lewis* for the proposition that in order to be a valid and enforceable written request under § 1734, the writing must "manifest the insured's desire to purchase uninsured and underinsured coverage in amounts equal to or less than the bodily injury limits"; must be signed by the named insured; and must "include an express designation of the amount of uninsured and underinsured coverage requested." *O'Mara*, 907 A.2d at 602–603, *citing Lewis*, 793 A.2d at 153. In *Lewis* the Supreme Court references

*Emig* as a decision properly addressing an insurer's noncompliance with § 1734. *Lewis,* 793 A.2d at 154 n. 17. While our *en banc* decision in *O'Mara* does not even mention *Emig,* the decision in *O'Mara* applies *Lewis,* and *Lewis* approves of *Emig.* Thus, our reliance on *Emig* rests on firm footing.

¶ 33 Erie directs us to federal court decisions indicating that a signed application containing the amount of coverage requested may properly be held to constitute a valid and enforceable written request for lower limits under § 1734. *See e.g., State Farm Mutual Auto. Insurance Company v. Hughes,* 438 F.Supp.2d 526 (E.D.Pa.2006). The trial court ably discussed *Brethren Mutual Insurance Company v. Triboski–Gray,* 584 F.Supp.2d 687 (M.D.Pa.2008), which held that an insured's signature on an application, coupled with the insured's signature on the § 1791 "Important Notice", did not satisfy the written request for lower limits requirement of § 1734. None of the federal decisions are, of course, binding upon us. However, we find *Triboski–Gray,* which expressly and, we think, correctly relies upon our decision in *Emig,* to be most persuasive.

 ¶ 34 Erie also contends that Larrimore's receipt of quarterly renewal notices and her payment of lower premiums over the six year period prior to the accident demonstrated her actual knowledge of and acquiescence to her selection of UM and UIM coverage with limits that were lower than her bodily injury liability coverage. There is some dispute as to whether this argument was fully advanced in the trial court and therefore not waived. On this point we note that Erie's reply to Larrimore's motion for summary judgment explicitly asserts that: "Payment of lower premiums over a six year period prior to the Accident demonstrates an insured's

knowledge of and acquiescence to their selection of UIM Bodily Injury Coverage in an amount lower than their Bodily Injury Liability Coverage." Erie Reply to Motion for Summary Judgment at ¶ 19. In addition, Erie's Rule 1925 statement raises this issue. Erie Rule 1925 Statement at ¶ 6. We find that this argument was sufficiently advanced below as to avoid waiver on appeal.

 ¶ 35 Though preserved, the issue warrants no relief. This Court has held that "the insured's payment of her premiums for several years thereafter can not operate as a waiver under Sections 1734 and 1791." *Breuninger v. Pennland Insurance Company,* 450 Pa.Super. 149, 675 A.2d 353, 357 (1996). *See Emig,* 664 A.2d at 565 n. 1 (referencing the insignificance of the payment of premiums for lower UM and UIM coverages for a period of years). Erie cites to no binding authority to the contrary. The insurance company's obligation to issue a policy with UIM coverage in an amount equal to the bodily injury liability coverage is not relieved unless the company has received a written request in conformity with § 1734. *Blood,* 934 A.2d at 1226, *quoting Resseguie,* 980 F.2d at 231. Receipt of renewal notices and payment of lower premiums does not constitute such a written request.

 ¶ 36 Finally, Erie contends that lower court erred in failing to follow *Blood v. Old Guard Insurance Company,* 594 Pa. 151, 934 A.2d 1218 (2007) and *Salazar v. Allstate Insurance Company,* 549 Pa. 658, 702 A.2d 1038 (1997), by fashioning a remedy reforming the UM and UIM coverage limits such that they were deemed to be equal to the bodily injury liability coverage limits, when no such remedy exists. Here, again, there is some dispute as to whether this argument was fully advanced in the trial court and therefore not waived.

¶ 37 Erie concedes that this argument was not advanced in the context of actually litigating the motions for summary judgment, but asserts that the issue was preserved because this argument was advanced in Erie's Motion for Reconsideration. Under Rule 302(a) of the Rules of Appellate Procedure, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). This Court has held that "arguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal." *Devine v. Hutt,* 863 A.2d 1160, 1169 (Pa.Super.2004). Denial of reconsideration is not subject to appellate review. *Cheathem v. Temple University Hospital,* 743 A.2d 518, 521 (Pa.Super.1999). Thus, appeal here lies only from the original summary judgment Order of January 13, 2009, not from denial of reconsideration. Since the argument complaining that the trial court improperly created a remedy was not raised before the trial court in opposition to summary judgment, it is waived and cannot be raised for the first time on appeal.

¶ 38 Notwithstanding the waiver, we conclude that the remedy afforded by the trial court was correct and supported by the law. The trial court denied Erie's motion for summary judgment, granted Larrimore's motion for summary judgment, and ordered that the UIM coverage limits were deemed equal to the bodily injury liability coverage limits, *i.e.,* $600,000.00, representing an amount equal to her bodily injury limits of $300,000.00, stacked for two vehicles. If there is not proper written request for lower limits in conformity with § 1734, then the UM and UIM coverages are deemed equal to the bodily injury liability limits. *Nationwide Mutual Insurance Company v. Heintz,* 804 A.2d 1209, 1216 n. 7 (Pa.Super.2002),

*citing Emig,* 664 A.2d at 569. No relief is warranted.

¶ 39 Order **AFFIRMED.** Jurisdiction **RELINQUISHED.**