J-A04008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CARRI COLLINGWOOD, INDIVIDUALLY; AS ADMINISTRATRIX OF THE ESTATE OF SHAWN M. COLLINGWOOD, DECEASED; AND AS PARENT AND NATURAL GUARDIAN OF CAITLIN COLLINGWOOD, A MINOR AND CARLENE COLLINGWOOD, A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| O'BRIEN'S RENT ALL AND SALES INC., JOHN MILNER, EICKHOFF CORPORATION, AND CONSOL PENNSYLVANIA COAL COMPANY, | |
| APPEAL OF: CONSOL PENNSYLVANIA COAL COMPANY, | |
| Appellees | No. 547 WDA 2014 |

Appeal from the Judgment Entered April 2, 2014
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2010-2186

BEFORE: BOWES, OLSON, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 19, 2015**

In this appeal, Consol Pennsylvania Coal Company ("Consol") challenges the trial court's conclusion that it is not entitled to contractual indemnification from Eickhoff Corporation ("Eickhoff") for the amount it was required to pay in this

_____

[*] Retired Senior Judge assigned to the Superior Court.

personal injury action due to the negligence of O'Brien's Rent All and Sales, Inc., ("O'Brien's") and John Milner, an employee of O'Brien's. After careful review, we affirm.

On December 8, 2005, Shawn Collingwood was driving past a flatbed tractor-trailer truck when a metal object dislodged from the truck and flew into Mr. Collingwood's vehicle, killing him instantly. The truck in question was owned by O'Brien's and was being driven by Mr. Milner. The 126-pound metal item that struck Mr. Collingwood was a pin from a piece of mining equipment known as a long wall coal shearer. The shearer was owned by Consol and was being transported by O'Brien's to Eickhoff for refurbishment.

A shearer is used to perform underground coal mining. It consists of a body, two ranging arms, four pins that secure the ranging arms to the body, and drums attached to the end of the arms. On the day of the accident, the body of the shearer involved in this accident was loaded onto O'Brien's flatbed tractor-trailer truck at Consol's Enlow Fork Mine in West Finley, Washington County. Mr. Milner placed three pins inside a storage compartment of the vehicle. Mr. Milner was traveling south on Route 221, and, as he rounded a curve in the road, the fourth pin flew from the truck and struck Mr. Collingwood as he drove past the truck in the opposite direction.

In May 2006, Mrs. Collingwood, individually, in her capacity as administratrix of her husband's estate, and as guardian of their two minor children, instituted a personal injury action against Consol, O'Brien's, Mr. Milner, and Eickhoff. Consol

filed a cross-claim against Eickhoff, maintaining, *inter alia*, that Eickhoff had contractually agreed to indemnify Consol for Eickhoff's negligence and for O'Brien's negligence. Mrs. Collingwood settled with Eickhoff, which then moved for and was granted summary judgment. Consol also filed a motion for summary judgment as to its claimed right to contractual indemnification against Eickhoff. After a response and cross-motion for summary judgment on the issue from Eickhoff, the trial court ruled that Consol was not contractually entitled to indemnification from Eickhoff for O'Brien's negligence and entered judgment in favor of Eickoff. Mrs. Collingwood thereafter settled with O'Brien's and Mr. Milner for $1,000,000.

On September 10, 2012, the case proceeded to a jury trial, where the only named defendants were Consol and O'Brien's/Milner. The jury found O'Brien's to be ninety percent negligent in causing Mr. Collingwood's death and Consol to be ten percent negligent. It awarded Mrs. Collingwood $3,272,000. Post-trial motions were filed by Mrs. Collingwood and Consol. The verdict was molded to reflect the settlements with O'Brien's and Eickhoff, and delay damages were awarded to Mrs. Collingwood. On April 2, 2014, judgment in the amount of $2,645,144.25 was entered against Consol.

Consol filed this appeal, raising six issues, and Mrs. Collingwood filed a cross-appeal. After the appeal was filed, Consol and Mrs. Collingwood reached a settlement of their claims. They filed with this Court a joint application to discontinue the Collingwood appeal entirely and to dismiss all but one of the issues

raised by Consol in its appeal. Specifically, Consol articulates the one remaining issue as follows:

A. Was it proper to deny [Consol's] motion for summary judgment and grant Eickhoff's motion for summary judgment as to [Consol's] claim for contractual indemnity despite a clear course of dealing showing that Eickhoff agreed to indemnify [Consol] for the negligence of Eickhoff's subcontractors?

Appellant's brief at 4.

This contention concerns the cross-motions for summary judgment filed by Eickhoff and Consol as to Consol's claim for contractual indemnification. In the summary judgment setting, the following standards apply:

"Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law, and our scope of review is plenary." *Petrina v. Allied Glove Corp.,* 46 A.3d 795, 797–798 (Pa.Super. 2012) (citations omitted). "We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Barnes v. Keller,* 62 A.3d 382, 385 (Pa.Super. 2012), *citing Erie Ins. Exch. v. Larrimore,* 987 A.2d 732, 736 (Pa.Super. 2009) (citation omitted). "Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered." *Id.*

*Rourke v. Pennsylvania Nat. Mut. Cas. Ins. Co.* 116 A.3d 87, 96 - 97 (Pa.Super. 2015) (citation omitted). The issue in question requires us to examine the contract between Eickhoff and Consol for the rebuild in order to determine whether the factual underpinning of Consol's claim, which is that O'Brien's was Eickhoff's subcontractor under the contract in question, is correct. "The interpretation of any contract is a question of law and this Court's scope of

- 4 -

review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences." **Stephan v. Waldron Elec. Heating and Cooling LLC**, 100 A.3d 660, 665 (Pa.Super. 2014).

We garner the pertinent facts from the cross-motions for summary judgment filed on this question. In the past, Consol both purchased new shearers from Eickhoff and had Eickhoff rebuild previously-purchased shearers. When Consol either purchased a new shearer or contracted for a rebuild, Consol would disseminate to Eickhoff a purchase order with an assigned number. The initial pages of the purchase orders contained either the terms and conditions for the purchase of a new shearer or a detailed description of the refurbishing work to be performed by Eickhoff. These first pages were followed by a single page indicating that the purchase order also was subject to terms and conditions incorporated by reference. On that page, Consol's purchasing agent executed the purchase orders, but there was no corresponding signature line for Eickhoff, and Eickhoff never signed any purchase order, including the one pertaining to the rebuild in question. After Eickhoff completed the work outlined in the purchase order, it would invoice Consol for either the shearer or the rebuild by utilizing the purchase order number previously assigned by Consol.

The indemnification provision that Consol seeks to enforce herein was one of the terms and conditions that were incorporated by reference in every purchase order disseminated by Consol, which is referred to as Buyer, to Eickhoff, which is referenced as Seller. It provided:

Seller agrees to indemnify and defend Buyer its shareholders, directors, officers and employees, and hold each of them harmless from and against any and all claims, liabilities, losses, damages and expenses resulting, in whole or in part, from (1) any act or omission, negligent or otherwise, by Seller, or Seller's agents, subcontractors or assigns in carrying out this contract, or (2) breach of any warranty or agreement hereunder. . . . Matters covered by this indemnity include, but are not limited to, settlements, judgments, court costs, attorney's fees and other litigation expenses incurred by [Consol] arising out of actual or alleged (1) injury to or death of any person[.]

Consol's position on appeal is that O'Brien's was Eickhoff's subcontractor when it was transporting the shearer to Eickhoff. The specific purchase order for the rebuild at issue in this case was number 4700095338. The first seven pages of the purchase order outlined the work to be performed by Eickhoff. That work included 1) mechanical requirements, 2) actions that had to be performed by Eickhoff with respect to hydraulics, lubrication and the water system; 3) and work to be undertaken by Eickhoff on the electrical system. Additionally, those first seven pages contained the price that Consol would pay for the rebuild and indicated that the equipment had to comply with thirteen outlined requirements contained in a specification adopted by Consol. Under the contract, the drums were left at the mine, Consol performed the rebuild work on the drums, and the drums were shipped to Eickhoff for testing once the rebuild process on the body was completed by Eickhoff.

The purchase order at no point stated that the work to be performed by Eickhoff included retrieval of the shearer from Consol and transport of the shearer to Eickhoff. Rather, the purchase order indicated that transportation costs were to

be prepaid by Eickhoff and then billed directly to Consol as a separate line item when Consol was billed for the cost of the rebuild. Consol Pennsylvania Coal Company's Appendix of Exhibits in Support of Motion for Summary Judgment Against Eickhoff Corporation, 7/21/10, at Appendix 5, page 9 (Eickhoff required to, "Prepay all transportation charges, state transportation charges separately from materials charged on invoices.  Attach to the invoice documentation to support transportation charges.").  Consistent with this language, the purchase order, in a header on the first seven pages, stated: "Incoterms SPB SP/PPD&Add." *Id.* at 1-7.  Consol never established the meaning of "SPB," but did prove that the initials "SP/PPD&ADD" meant, "shipping point, prepaid and add." Appendix of Documents Referenced in Support of Eickhoff Corporation's Several Motions for Summary Judgment-Vol. 1, Appendix 2,  Deposition of Don Dyky, 3/19/09, at 139.

Don Dyky was Consol's purchasing agent, and he drafted and executed the purchase order in question.  When deposed, Mr. Dyky was asked whether it was "a term of this purchase order that Eickhoff is responsible for shipping the shearer before it is refurbished and after?   Is that a term of this purchase order . . . ?" *Id*. at 138.  Mr. Dyky responded, "It's a prepaid add situation, so they can go ahead and do that and add the invoice amount to the purchase order." *Id*.   When asked if the contract, which Mr. Dyky drafted, placed the obligation upon Eickhoff to arrange for shipping, Consol objected to him answering that question, and stated that that question "calls for contract interpretation." *Id*. at 139.

Consol established that Vanessa Taddeo, who worked for Eickhoff and was responsible for its trucking arrangements, contacted O'Brien's to arrange for it to transport the shearer from Enlow Fork Mine to Eickhoff for refurbishing. Keith Michael Kinsella was vice president and manager of Eickhoff. He agreed that the contract required Eickhoff to pay transportation costs in advance and then wait to bill Consol for those costs until the rebuild was completed and understood the contract to require that Eickhoff make the transportation arrangements to have the shearer taken from the Enlow Fork Mine and delivered to Eickhoff's facility. It is uncontested that Eickhoff used various trucking companies for the delivery of its shearers and was not in the business of transporting mining equipment that it sold or refurbished. Eickhoff used O'Brien's to send and retrieve shearers with respect to Consol because O'Brien's was a preferred vendor of Consol. O'Brien's had equipment and employees present at the Enlow Fork Mine daily.[1]

_____

[1] When it obtained summary judgment in its favor in this litigation and was removed as a named defendant, Eickhoff relied upon the depositions of eyewitnesses to establish that none of its employees played any role in either the preparation of the shearer for loading or the actual loading of the shearer. Instead, O'Brien's and Consol personnel were present during those operations. One of Eickhoff's employees, Patrick Monahan, was present when Mr. Milner unloaded a refurbished shearer at Consol's Bailey Mine, which shared an entrance with the Enlow Fork Mine. Mr. Monahan then briefly stopped by the Enlow Fork Mine to verify that Consol and O'Brien's employees were going to load and transport the shearer at issue herein. Pennsylvania State Trooper Douglas Bartoe, the lead investigating officer after the accident, indicated that he did not uncover any information to contradict Mr. Monahan's report that he did not participate in the loading of the shearer at the Enlow Fork Mine.

In responding to the motion for summary judgment on the claim for contractual indemnity, Eickhoff maintained, *inter alia*, that O'Brien's was not its subcontractor for purposes of the rebuild. In resolving the cross-motions for summary judgment, the trial court first concluded that the indemnification term was unenforceable based upon the fact that Eickhoff never expressly agreed to that term by executing any purchase order. The trial court alternatively ruled that the indemnification provision was inapplicable since there was no evidence that Eickhoff or any of its agents or subcontractors or assigns committed any act or omission that may have caused the accident.[2]

On appeal, Consol maintains the indemnification provision is triggered because O'Brien's was Eickhoff's subcontractor for purposes of the refurbishing contract. It makes scant effort to establish the critical factual premise of its position on appeal. Specifically, Consol offers no definition of the term "subcontractor" and makes only conclusory statements about why O'Brien's, which is a trucking company unaffiliated with Eickhoff, should be considered a subcontractor of Eickhoff under the contract at issue herein.

_____

[2] We affirm the trial court's conclusion that O'Brien's was not encompassed by the indemnification provision by rejecting Consol's argument that O'Brien's was a Eickhoff's subcontractor. We therefore do not reach either the question of whether the terms and conditions attached to the purchase order were part of the contract between Consol and Eickhoff or the issue of whether the indemnification provision is, in and of itself, unenforceable since Eickhoff never expressly agreed to that clause.

Consol's argument in this respect is limited to two sentences. It states, "Relative to the rebuild at issue, as required by the Purchase Order, Eickhoff contacted and contracted with O'Brien's for the transportation of the longwall coal shearer from [Consol's] Enlow Fork Mine to Eickhoff's facilities in Moon Township, Pennsylvania." Consol's brief at 23-24. Consol cites to one page of the reproduced record containing a portion of its motion for summary judgment. In its reply brief, Consol maintains that "Eickhoff representatives understood that the plain language of the Purchase Orders required Eickhoff to arrange for shipping and Eickhoff acted accordingly for every coal shearer rebuild." Consol's Reply Brief at 2. Consol then cites portions of the reproduced record without elaborating on the contents. We have reviewed the cited portions of the reproduced record, which are deposition excerpts from Mr. Kinsella and Ms. Taddeo wherein those witnesses indicate that they understood that the contract required Eickhoff to prepay the transportation costs and then bill them to Consol and that Eickhoff would arrange for transportation.

We first articulate the definition of a subcontractor. In ***Clifford F. MacEvoy Co. v. U.S. for Use and Benefit of Calvin Tomkins Co.***, 322 U.S. 102 (1944), the United States Supreme Court had to determine the meaning of the word subcontractor for purposes of a federal statute, which made no "attempt to define the word" itself. ***Id***. at 108. The Court looked at the common law meaning of the term and stated, "In a broad, generic sense a subcontractor includes anyone who has a contract to furnish labor or material to the prime contractor. . . . Under the

more technical meaning, as established by usage in the building trades, a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract." *Id*. at 108-09 (footnote omitted).

More recently, our own Supreme Court interpreted the term subcontractor. In *Bricklayers of Western Pennsylvania Combined Funds, Inc. v. Scott's Development Co.*, 90 A.3d 682 (Pa. 2014), the Court had to determine whether the Mechanics' Lien Law of 1963 ("the Act") authorized employee benefit trust funds operated for two unions to file mechanic's liens on behalf of union members after the union members performed work for a contractor at a construction site. At issue was whether the union workers were "subcontractors" pursuant to the Act.

The trial court held that the union workers did not fall within the meaning of "subcontractor" as that term is defined by the Act.[3] Our Supreme Court affirmed

_____

[3] Under the mechanics' lien law, a subcontractor is defined as:

> one who, by contract with the contractor, or pursuant to a contract with a subcontractor in direct privity of a contract with a contractor, express or implied, erects, constructs, alters or repairs an improvement or any part thereof; or furnishes labor, skill or superintendence thereto; or supplies or hauls materials, fixtures, machinery or equipment reasonably necessary for and actually used therein; or any or all of the foregoing, whether as superintendent, builder or materialman. The term does not include an architect or engineer who contracts with a contractor or subcontractor, or a person who contracts with a materialman or a person who contracts with a subcontractor not in direct privity of a contract with a contractor.

*(Footnote Continued Next Page)*

the trial court's conclusion that the union members were employees and not subcontractors of the contractor. In interpreting the Act, it relied upon the building trade definition of subcontractor, as outlined by the United States Supreme Court, and held, "a subcontractor is generally understood to be a person or business 'who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen.'" *Id*. (partially quoting ***Clifford F. MacEvoy Co.***, ***supra*** at 109) (emphasis omitted).

With this definition in mind, we examine the contract in question. The purchase order was a request that Eickhoff refurbish the shearer at issue in this accident, and there were seven pages outlining Eickhoff's obligations in that respect. Nothing in the description of the work to be performed by Eickhoff indicated that the work included the retrieval of the shearer from Consol's mine and the delivery of that shearer to Eickhoff's facility. A subcontractor is a company that performs for or takes from the prime contractor a specific part of the labor or material requirements assumed by the original contractor under the contract at issue. Eickhoff agreed to rebuild the shearer. Thus, if Eickhoff engaged another company to perform the electric work that it was required to perform in order to complete the rebuild of the shearer, that company would be a subcontractor.

*(Footnote Continued)* ————————————

49 P.S. § 1201(5).

O'Brien's did not perform any of the refurbishing work that Eickhoff agreed to perform and it did not supply any materials for the refurbishing process.

Indeed, the fact that Eickhoff had to "arrange for transportation" and then prepay it and invoice separately for it does nothing more than reinforce the conclusion that the work that Eickhoff was to perform under the contract did not include transporting the shearer. If Eickhoff was required, as part of the work to be performed under the contract, to retrieve and deliver the shearer, Eickhoff would not have had to arrange to have that work performed by an independent trucking company. Eickhoff sells and refurbishes shearers. It does not provide transportation services. In fact, Eickhoff established that it engaged various trucking companies to perform that function.

Given the clear and unequivocal language of the contract outlining the work that Eickhoff agreed to perform, we cannot conclude that O'Brien's was a subcontractor of Eickhoff under the contract in question. In the absence of such a relationship, the indemnification provision does not apply, and we need not reach the issue of its enforceability. Hence, we affirm.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2015

- 13 -