J-A16041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NATIONSTAR MORTGAGE, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRIS INCH and CHRISTINE INCH | : | |
| | : | |
| Appellants | : | No. 1991 MDA 2018 |

Appeal from the Order Entered November 16, 2018
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2010-02320

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JULY 31, 2019**

Appellants, Chris Inch and Christine Inch, appeal from the order entered by the Court of Common Pleas of Lebanon County granting a second motion for summary judgment in favor of Nationstar Mortgage, LLC, ("Nationstar"). The trial court entered the order after reexamining the record consistent with this Court's decision in the prior appeal, ***Nationstar Mortgage, LLC v. Inch***, No. 1556 MDA 2016, unpublished memorandum at **2-3 (Pa.Super. filed November 3, 2017), in which we vacated the prior summary judgment order in favor of Nationstar and remanded with instructions directing the court to consider the Inches' expert report—the "Michaels Report"—offered in support of their defense that they never signed the mortgage at issue.  Because the Inches' brief fails to challenge the trial court's post-remand preclusion of the Michael's Report as a sanction for their discovery violation—a determination expressly not barred under this Court's prior decision—we affirm.

---

*   Former Justice specially assigned to the Superior Court.

The panel decision in **Nationstar** aptly discussed the pertinent facts and procedural history, such that we adopt it here, with alteration in tense where necessary to reflect the post-remand stage of the present appeal:

This case relates to a mortgage created on August 13, 2007. The mortgage document lists Chris Inch and Christine Inch, owners of real property located at 801 West Cherry Street in Palmyra, as the borrowers, and Members 1st Federal Credit Union as the lender. The mortgage and accompanying promissory note specify that the borrowers owe the lender $131,200 plus interest.

On September 24, 2010, the mortgage was assigned to Ocwen Loan Servicing, LLC, which then sued the Inches for default. On January 11, 2012, Ocwen filed a motion for summary judgment, which the trial court denied on June 6, 2012.[] On March 31, 2013, the mortgage was assigned to Nationstar.[] On March 18, 2015, Christine Inch executed a consent judgment, and on March 25, 2015, judgment was entered against her.[]

On April 1, 2016, Nationstar filed another motion for summary judgment. Chris Inch (hereinafter, "Inch") responded on May 13, 2016. Inch argued that whether he took out a mortgage or signed the mortgage document and note remained an issue of material fact,[] and he attached to his opposition a report by Gary Michaels of "Mortgage Defense Systems," dated May 12, 2016 (the "Michaels Report"). The Michaels Report concluded that the signatures of the Inches were digitally inserted onto the mortgage and note.

After briefing, on August 26, 2016, the trial court entered summary judgment in favor of Nationstar. In its opinion accompanying the order granting the motion, the court explained that it was Inch's burden to rebut the presumption that the signatures are authentic and that, although Nationstar provided evidence supporting the authenticity of the signatures and the validity of the mortgage, Inch "has not produced any evidence regarding his denial of signing the documents that contain his signature." Trial Ct. Op., 8/26/16, at 6. On September 20, 2016, Inch filed a motion for reconsideration, which the court denied on September 23, 2016.[]

Inch filed a notice of appeal on September 21, 2016,[] and he filed a *pro se* appellate brief with this Court on February 2, 2017. [We found that] Inch's brief fail[ed] to conform in substantial part to the requirements in the Rules of Appellate Procedure.[] Among other things, the brief [did] not include a statement of the questions that he raise[d] on appeal, **see** Pa.R.A.P. 2116—a significant defect because that statement defines the issues that we must address to afford relief. In light of this noncompliance, we [reasoned that we] could dismiss Inch's appeal. **See** Pa.R.A.P. 2101.

Upon review of Inch's brief, however, we discern[ed] one issue that he [sought] to raise that [was] capable of our review. The third sentence of Inch's brief read[]:

> The problems occurred when [the trial judge] took it upon himself to ignore the Professional Forensic Document examination performed by Mr. Gary Michaels of Mortgage Defense Systems and illegally granted a Summary Judgment against Chris Inch and in favor of Nationstar Mortgage LLC through the conspiratorial enterprise of the Plaintiffs for knowingly and intentionally misrepresenting material evidence and the concealment and destruction of securities instruments and the forged and fraudulently creation of new instruments in an effort to illegally take possession of the Inch property.

Inch's Brief at 1–2. Inch therefore question[ed] whether the trial court erred by not considering the Michaels Report when it granted Nationstar's motion for summary judgment.

. . .

[We found] the record reflects that Inch presented the Michaels Report to the trial court. However, the trial court's order and opinion [made] no mention of it; instead, the trial court [stated] that summary judgment [was] appropriate because Inch [had] not presented "any evidence" to support the fact at issue.

We [were] therefore unable to discern whether the court considered the Report and whether it viewed the evidence in a light most favorable to Inch, the non-moving party. It may be

that the trial court did not consider the Report[, we deduced,] because it concluded that the Report was not properly before it— a reason intimated by Nationstar during the summary judgment briefing.[8] But the trial court [did] not say that, and its reasons for not considering the Report [were] not apparent.

Accordingly, we vacate[d] the order granting summary judgment and remand[ed] so that the trial court [could] address the evidence proffered by Inch. *Cf. Eaddy v. Hamaty*, 694 A.2d 639, 644 (Pa. Super. 1997) (vacating order granting summary judgment for correct application of summary judgment rules).

---

[8] We render[ed] no decision as to whether the trial court was obligated to consider the Report, or whether, for example, discovery rules precluded its consideration. Nothing within our decision [barred] the trial court from again granting summary judgment.

---

*Nationstar*, *supra* at \*\*1-2 (tense modified) (some footnotes omitted).

On remand,[1] the trial court considered whether the Michaels Report, when viewed in a light most favorable to the Inches as the non-moving party, created an issue of material fact regarding whether they signed the mortgage, thus precluding summary judgment in Nationstar's favor. After discussing the governing standard of review on a motion for summary judgment and acknowledging the burdens of production and proof applicable in a matter involving the validity of a signature on a mortgage, *see* 13 Pa.C.S.A. § 3308(a) and corresponding decisional law, discussed *infra*, the trial court

---

[1] After remand, Appellants filed a Petition for Assumption of Extraordinary Jurisdiction with the Pennsylvania Supreme Court. On September 27, 2018, the Supreme Court denied the petition, at which point the trial court resumed its post-remand review of the record.

- 4 -

reviewed the parties' pleadings, responses, and production of documentary support—including the Michaels Report—for their respective positions, as follows:

In light of Defendant Chris Inch's persistent denial of executing the Mortgage and Promissory Note on the Real Property, the [trial court] denied [Nationstar's] First Motion for Summary Judgment.

Thereafter, Plaintiff Nationstar provided copies of the [following documentation]: [the] Mortgage that displayed the signatures of both Defendants; the Note that also displays the signatures of both Defendants; the deposition of Ms. Annette C. Myers (wherein she verifies that she would not have made an entry into her notarial register or placed her seal on the Mortgage if she did not witness Defendant Chris Inch sign the name); Defendants Inch Bank Statements showing automatic withdrawals for the Mortgage for multiple years; [ ] Schedule D of Defendant Chris Inch's Bankruptcy Petition which was verified by Defendant Chris Inch (and in which he listed the Mortgage against the Real Property)[; and, "of great importance," as the trial court describes it later in the opinion, "co-Defendant Christine Inch acknowledged the Mortgage and executed a consent judgment in favor of Plaintiff [Nationstar]."]

Despite Plaintiff Nationstar's production of these documents, Defendant Chris Inch continues to claim that neither he nor his co-Defendant, Christine Inch, signed any documents regarding taking out a mortgage, and further, Defendant Chris Inch claims that the documents produced by Plaintiff Nationstar have been forged.

Defendant Chris Inch submitted two exhibits as part of his May 13, 2016 Affidavit in Objection to Plaintiff's Second Motion for Summary Judgment. As mentioned, the first exhibit was [the Michaels Report, prepared by forensic expert Gary Michaels from Mortgage Defense Systems, opining that the documents used to foreclose upon Chris Inch were forged and fraudulently created].

Though the [trial court] was aware of this Report and conclusion, not rendered within any degree of scientific or professional certainty, and missing one of the four pages it claimed to possess,

the [trial court] found such report to be barred by the discovery deadlines set in this case. [Specifically, Inch filed the proposed expert report] seventy-three (73) days after the deadline as articulated in the August 18, 2015 Amended Order of Court. The Court was clear and unambiguous that the deadline for all factual discovery in the above-referenced matter would be thirty (30) days thereafter (more than six years after the Complaint in Mortgage Foreclosure was filed).

[Furthermore, the trial court rejects Chris Inch's argument that the Michaels Report was a continuation of timely testimony provided by one Michael Paoletta. First, the court notes Mr. Paoletta provided no testimony in this matter, and second, the Michaels Report concedes that Mr. Inch did not even hire Mortgage Defense Systems until April 7, 2016, which was more than one month past the court-imposed deadline for expert reports. For these reasons, the trial court] found the reports of Mr. Gary Michaels inadmissible.

Trial Court Opinion, at 33-34.

Even if the trial court had not barred the Michaels Report as untimely, the court explains, it still would have granted Nationstar's second motion for summary judgment. Specifically, the court reviewed the substance of the Report and found there were "no statements or opinions that conclude Defendants did not sign the Mortgage and/or Promissory Note in this action . . . let alone opinions [rendered] within any degree of scientific or professional certainty." *Id.* at 34-35. Instead, the court noted, the Report consisted only of "many images and phrases such as "Photocopy Fabrication Detected/Clone," "Photoshop JPEG compression 12%," "Duplicated Regions," and "Evidence of Photoshop Cut & Paste/JPEG Compression." *Id.* at 35.

The trial court concludes, therefore, that even when viewing the Michaels Report in a light most favorable to Defendants/Appellees Chris and

Christine Inch as the non-moving party, the Report does not assist the Inches in rebutting the presumption that they validly signed the Mortgage on August 13, 2007. Because the Inches otherwise admit that the mortgage is in default, that they have failed to pay interest on the obligation, and that the recorded mortgage is in the specified amount, the trial court granted Nationstar's second motion for summary judgment. This timely appeal followed.

We begin with our standard of review of an order granting a motion for summary judgment:

> 'Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary.' **Petrina v. Allied Glove Corp.**, 46 A.3d 795, 797–798 (Pa.Super. 2012) (citations omitted). 'We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.' **Barnes v. Keller**, 62 A.3d 382, 385 (Pa.Super. 2012), *citing* **Erie Ins. Exch. v. Larrimore**, 987 A.2d 732, 736 (Pa.Super. 2009) (citation omitted). 'Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.' **Id**.

**PHH Mortg. Corp.**, 100 A.3d at 616 (citation omitted).

Initially, we note the scope of this appeal is limited to the one issue this Court's previous three-judge panel deemed capable of review and, ultimately, remanded for the trial court's attention, namely, whether summary judgment is appropriate after due consideration of the Michaels Report.[2] One aspect of

---

[2] Therefore, the second stated issue asking whether Nationstar "use[d] bribery and coercion to force Christine Inch to recant her original testimony for the

due consideration involves whether Chris and Christine Inch filed the Report in compliance with the trial court's discovery deadline. *See Nationstar*, *supra* at *2 n.8 (noting the panel rendered no decision as to whether discovery rules precluded consideration of the Michaels Report).

As the trial court explains in its post-remand opinion, the first reason it rejected the Michael's Report was because the Inches filed the Report belatedly. Specifically, the trial court's case management order of August 18, 2015, culminated a six-year long discovery period by imposing an expert report deadline of March 1, 2016. The Inches, however, failed to file a report during the remaining five and one-half months. Instead, without offering any reason for their delay, let alone one averring due diligence or good faith inadvertence, the Inches filed the Michaels Report on May 13, 2016, 73 days past the deadline prescribed by the court's order.

Notably, we observe that the Inches' appellate brief fails to address the issue of whether the court appropriately enforced its discovery deadline by precluding submission of the Michael's Report into the discovery record. This failure represents a critical briefing deficiency, where the trial court clearly articulated in its post-remand opinion that preclusion resulted in a record necessitating summary judgment, and where this Court's previous three-judge panel acknowledged that nothing in its decision barred the trial court from so ruling.

---

purpose of seeking summary judgment" is beyond the limits of our review of the post-remand appeal.

Given the brief's silence on what amounts to a dispositive aspect of the court's order of summary judgment, we are constrained to affirm the order based on waiver.[3] *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'"). *See also Irwin Union National Bank and Trust Company*, 4 A.3d 1099 (Pa.Super. 2010) (explaining Superior Court will not act as counsel and will not develop arguments on behalf of appellant; when deficiencies in brief hinder our ability to conduct meaningful appellate review, we may deem certain issues waived).

If we were to assume, *arguendo*, that the court erroneously precluded the Michaels Report from the discovery record, we would address whether the Report created an issue of material fact regarding whether the Inches signed the mortgage and promissory note in question. It is well-settled that no person shall be liable on a negotiable instrument such as a mortgage or promissory note unless his or her signature appears on it. *PHH Mortg. Corp.*,

---

[3] *See Wilkins v. Marsico*, 903 A.2d 1281, 1284–85 (Pa.Super. 2006) ("Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing"; citations omitted).

100 A.3d at 617 (citing **Triffin v. Dillaborough**, 670 A.2d 684, 689 (Pa.Super. 1996), *aff'd*, 716 A.2d 605 (Pa. 1998).

With respect to Section 3308(a), "proof of signatures," of the Pennsylvania Commercial Code,[4] this Court has observed,

> Pursuant to section 3308(a), a person denying the authenticity of a signature on a negotiable instrument must do so by specific denial in the pleadings. If specifically denied, the party claiming validity has the burden of proof to establish said validity, but a rebuttable presumption exists that the signature is authentic and authorized. **Id.; see generally Triffin**, 670 A.2d at 689. Section 1201(b)(8) of the PUCC defines "burden of establishing" as "the burden of persuading the trier of fact that the existence of the fact is more probable than its nonexistence." 13 Pa.C.S.A. § 1201(b)(8). Section 1206 provides that whenever the PUCC creates a "presumption" with respect to any fact, "the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence." *Id.* § 1206.
>
> The Comment to section 3308 offers additional insight into the presumption of the validity of signatures on negotiable instruments:

---

[4] Section 3308(a) provides:

> **(a) Proof of signatures.**—In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.

13 Pa.C.S.A. § 3308(a).

> The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of, or more accessible to, the defendant. The defendant is therefore required to make some sufficient showing of the grounds for the denial before the plaintiff is required to introduce evidence. The defendant's evidence need not be sufficient to require a directed verdict, but it must be enough to support the denial by permitting a finding in the defendant's favor. Until introduction of such evidence the presumption requires a finding for the plaintiff. Once such evidence is introduced the burden of establishing the signature by a preponderance of the total evidence is on the plaintiff.

*Id.* § 3308 Comment.

***PHH Mortg. Corp***, 100 A.3d at 617–18.

Our review of the Michaels Report as it appears in the certified record confirms the trial court's observation that it comprises nothing more than depictions of two copies of each page of the Mortgage, where one copy remains unmarked and the other copy bears the superimposed word "CLONE." At the heading of each depiction, moreover, appear one or more of the phrases, noted *supra*, without any explanatory comment or opinion. Notably, nowhere in the Report is there an expert opinion rendered to a reasonable degree of certainty that the documentary evidence shows the Inches' signatures to be invalid.

Under the Section 3308(a) statutory scheme and corresponding jurisprudence, as discussed *supra*, the Inches were required to present evidence sufficient to support their denial of a valid signature by permitting a finding in their favor. The Report fails to carry this burden of presentation,

particularly when viewed against the totality of Nationstar's evidence offering significant proof that the Inches validly signed the mortgage and promissory note.

Accordingly, were we to rely on merits review of the present matter, we would discern no abuse of discretion with the trial court's order granting summary judgment in favor of Nationstar. Nevertheless, as we have determined that the Brief of Appellants fails to challenge a dispositive aspect of the court's underlying order, we affirm on that basis.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2019