**NATIONWIDE INSURANCE COMPANY, Plaintiff,**

v.

**Marian RESSEGUIE and Larry C. Resseguie, Personal Representative of the Estate of Richard Resseguie, Deceased, Defendants.**

**No. 3:CV–90–1837.**

United States District Court, M.D. Pennsylvania.

Feb. 7, 1992.

Richard B. Wickersham, Boswell, Snyder, Tinter & Piccola, Harrisburg, Pa., for plaintiff.

D. Peter Johnson, Matson & Johnson, P.C., Lewisburg, Pa., for defendants.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

This declaratory judgment action was initiated by Nationwide Insurance Company ("Nationwide") to determine the limits of the underinsured motorist coverage under

the automobile insurance policy issued by Nationwide to Marian Resseguie. Nationwide contends that the limits are $15,000 per person and $30,000 per each occurrence. The defendants, Marian Resseguie and her son Larry Resseguie, in his capacity as representative of the estate of his father, Richard Resseguie, contend that the limits are equal to the bodily injury liability limits of $50,000 per person and $100,000 per each occurrence.

The parties are in agreement as to the facts in this case and have submitted a Joint Statement of Stipulated Facts. The court accepts and adopts the Joint Statement of Stipulated facts as its Findings of Fact in this matter. At a non-jury trial held on December 2, 1991, the parties formally placed their stipulation on the record, and presented their respective legal theories.

## RELEVANT FACTS

The following is a summary of the relevant facts in this matter:

In July of 1983, Marian Resseguie applied for and received an automobile insurance policy from Nationwide. Although Marian Resseguie was the only named insured on the policy, her husband Richard was listed along with her as a driver under the policy. On November 14, 1984, approximately two and one-half months prior to the renewal date of her policy, Nationwide mailed the "IMPORTANT NOTICE" required by Section 3 of the Motor Vehicle Financial Responsibility Law ("MVFRL") enacted October 1, 1984, as amended, 75 Pa.Cons.Stat. § 1791. This notice advised Marian Resseguie of the benefits and limits available under the MVFRL and provided her with an option selection form. She did not return the option selection form.

On January 8, 1985, approximately twenty days prior to the renewal date of her policy, Nationwide mailed to Marian Resseguie a renewal notice indicating that, pursuant to the MVFRL, higher underinsured motorist coverage equal to the bodily injury liability limits of $50,000 per person and $100,000 per occurrence were automatically provided because Nationwide did not re-

ceive her option selection form. The renewal notice further advised her to contact her agent if she desired to make changes or discuss the available options. She did not contact her agent to make changes and, on February 15, 1985, pursuant to the renewal notice, she personally delivered a cash payment to her agent for the higher coverage.

On February 20, 1985, Richard Resseguie orally requested a reduction in underinsured motorist coverage from $50,000 per person and $100,000 per occurrence to $15,000 per person and $30,000 per occurrence. Based on this oral request, on March 5, 1985, a declaration was issued and mailed to Marian Resseguie setting forth the new lower limits and the policy premiums were lowered to reflect the change. At no time did Marian Resseguie make an oral or written request to lower her limits. Nor did she specifically authorize her husband to do so. However, it was customary for the insurance agent to implement changes in Marian Resseguie's policy based on the requests of her husband. In fact, Marian Resseguie readily admits that from the date she applied for the policy through 1988, she had no dealings with anyone at Nationwide concerning her policy and that her husband would handle all dealings, discussions and changes in the policy.

On January 2, 1989, Richard Resseguie was killed in an automobile accident. After being informed that the defendants would seek the higher limits on the policy, Nationwide initiated this action for a declaratory judgment determining the limits of the policy.

## DISCUSSION

On October 1, 1984, Pennsylvania enacted the Motor Vehicle Financial Responsibility Law. This law had a significant impact on the obligations of insurance companies where uninsured and underinsured motorist coverage was concerned. The law requires insurance companies to provide uninsured and underinsured motorist coverage in amounts equal to the bodily injury liability coverage except where the named insured requests in writing coverage in

amounts less than the limits of liability for bodily injury. See 75 Pa.Cons.Stat. §§ 1731 and 1734.

The law further requires insurance companies to provide their customers with a one-time "IMPORTANT NOTICE", at the time of application for original coverage or at the time of first renewal after October 1, 1984, informing them of the benefits available under the MVFRL. 75 Pa.Cons.Stat. § 1791. The statute also provides the language for this "IMPORTANT NOTICE" which delineates the benefits and limits, and states "[y]our signature on this notice or your payment of any renewal premiums evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected." *Id.*

When this Important Notice was sent to Marian Resseguie, she did not return the option selection sheet provided along with the notice. Accordingly, Nationwide, as required by law, provided her with a policy at the limits prescribed by the MVFRL, including underinsured motorist coverage of $50,000 per person and $100,000 per occurrence. Although she did not sign the notice or specifically request the coverage, her payment of the renewal premium evidenced, by law, her actual knowledge and understanding of the benefits and limits. See *Id.*

Nationwide argues that Marian Resseguie's payments of the new lower premiums for several years, after her husband requested the lower underinsured motorist coverage, also constitutes actual knowledge by her of the lower coverage. However, while the Section 1791 notice provides that a signature on the notice *or* payment of renewal premiums constitutes actual knowledge of the benefits and limits, Section 1734, which governs a policy holder's election for coverage lower than the limits of liability for bodily injury subsequent to receipt of the "IMPORTANT NOTICE", requires the request to be in writing by the named insured. No request in writing was ever made by Marian Resseguie; the request was made orally by her husband, who was not a named insured. Therefore, Nationwide was never duly authorized to lower the limits of her underinsured motorist coverage from $50,000 per person and $100,000 per occurrence to $15,000 per person and $30,000 per occurrence.

The court sympathizes, in part, with Nationwide's position. After all, it is undisputed that although Marian Resseguie was the named insured, her husband, Richard Resseguie, handled all the insurance matters. Moreover, for several years the insurance declarations and related invoices paid by the insured reflected the lower coverage limits.

However, the statutory scheme of the MVFRL is clear. Section 1734 requires the named insured to request in writing that the limits of her coverage be lowered. Short of a written request by Marian Resseguie for the lower coverage, or an admission on her part that she had actual knowledge of the lower coverage, Nationwide simply was not authorized to alter her policy. To hold otherwise would defeat the purpose of the MVFRL by creating unintended ambiguities in the law. It is a very simple, clear-cut rule for an insurance company to follow—to lower the limits it must insist on a written authorization signed by the named insured.

Although the parties have cited cases in support of their respective positions, all of the cited cases are factually distinguishable. Each of the cases involved a policy which listed both the husband and wife as named insureds. *Nationwide Ins. Co. v. Tantorno*, No. 90–4639, 1991 WL 24921 (E.D.Pa. February 19, 1991); *Groff v. Continental Ins. Co.*, 741 F.Supp. 541 (E.D.Pa. 1990); *Liberty Mutual Fire Ins. Co. v. Lindsey*, 3 Pa.D. & C. 4th 659 (York Co. 1989); *Hepler v. Liberty Mutual Fire Ins. Co.*, 3 Pa.D. & C.4th 419 (Cumberland Co., 1989). In all of these cases, it was undisputed that at least one of the named insureds had requested, either in writing or orally, a change in the limits. In the instant case, Marian Resseguie was the only named insured, and there is absolutely no evidence that she ever requested that the limits of her policy be changed. As the courts have made clear, "[a]bsent the exist-

ence of a conclusive presumption under section 1791, the insurer must establish that the insured knowingly and intelligently waived the benefit of higher uninsured motorist protection in writing."

*Groff v. Continental Ins. Co.*, supra, 741 F.Supp. at 547 (citing *Johnson v. Concord Mutual Ins. Co.*, 450 Pa. 614, 300 A.2d 61, 64–65 (1973)).