**NATIONWIDE INSURANCE COMPANY, Appellant,**

v.

**Marian RESSEGUIE; Larry C. Resseguie, Personal Representative of the Estate of Richard Resseguie, Deceased.**

**No. 92–7131.**

United States Court of Appeals, Third Circuit.

Argued Sept. 24, 1992.

Decided Nov. 17, 1992.

Richard B. Wickersham (argued), Brigid Q. Alford, Boswell, Snyder, Tintner & Piccola, Harrisburg, Pa., for appellant.

D. Peter Johnson (argued), Matson & Johnson, Lewisburg, Pa., for appellees.

Before: MANSMANN, ROTH and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROTH, Circuit Judge:

This suit arises from a dispute over the meaning of § 1734 of the Pennsylvania Motor Vehicle Financial Responsibility Law. Appellant Nationwide Insurance Company ("Nationwide") contends that the underinsured motorist coverage of its named insured, appellee Marian Resseguie, was lowered by the verbal request of her husband. We are required to evaluate whether under Section 1734 of the Pennsylvania Motor Vehicle Financial Responsibility Law a request to lower underinsured motorist coverage must be in writing to be effective. Nationwide Insurance Company sought a declaration in the district court that the limits of underinsured motorist coverage in its policy issued to Marian Resseguie are $15,000 per person and $30,000 per accident. Marian Resseguie asserts that the policy's underinsured motorist limits are equal to its bodily injury liability limits of $50,000 per person and $100,000 per accident.

In his memorandum opinion, the district judge stated that "[s]hort of a written request by Marian Resseguie for the lower coverage, *or an admission on her part that she had actual knowledge of the lower coverage,* Nationwide simply was not authorized to alter her policy." *Nationwide Insurance Co. v. Resseguie,* 782 F.Supp. 292, 294 (M.D.Pa.1992) (emphasis

added). The meaning of § 1734 is clear; we will therefore affirm the judgment of the district court insofar as it is based on the requirement that a request for lower coverage be in writing by a named insured. However, we do not agree with the further holding of the district court that "an admission on [Marian Resseguie's] part that she had actual knowledge of the lower coverage" is legally significant.

I.

The parties do not dispute the material facts in this case. On July 28, 1983, Marian Resseguie signed an automobile insurance application for Nationwide automobile insurance on her 1980 Plymouth Volare four-door sedan. The application provided for bodily injury limits of $50,000 per person and $100,000 per accident ("$50,000/ $100,000") and uninsured motorist ("UM") coverage with limits of $15,000/$30,000. Marian Resseguie was the sole named insured on the policy; both Marian and her husband Richard were listed as drivers under the policy.

On October 1, 1984, the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.Cons.Stat.Ann. §§ 1701–99 (Supp. 1992) became effective. On November 14, 1984, approximately two and one-half months before the first policy renewal date following the MVFRL's enactment, Nationwide mailed the "IMPORTANT NOTICE" required under § 1791 of the MVFRL to Marian Resseguie. The "IMPORTANT NOTICE" advised her that, pursuant to the MVFRL, Nationwide made available to her higher UM and underinsured motorist ("UIM") coverage equal to the bodily injury liability limits of $50,000/$100,000. Nationwide also mailed her an options selection form.

On January 8, 1985, approximately twenty days before the renewal date of January 28, 1985, Nationwide mailed to Marian Resseguie a renewal notice indicating that Nationwide had automatically provided the higher UM/UIM coverage because they had not received her option selection form. The renewal notice further advised her to contact her agent if she desired to make changes to her policy or to discuss the available options. Marian Resseguie did not contact her agent to make changes and on February 15, 1985, she personally delivered a cash payment to her Nationwide agent for the higher UIM coverage. On February 20, 1985, Nationwide issued and mailed to Marian Resseguie a policy with bodily injury liability limits of $50,000/ $100,000 and UM/UIM coverage limits of $50,000/$100,000. The message on the policy's declaration page read: "Thank you for your renewal premium payment. This new policy replaces your former no-fault personal injury protection with your new first-party injury benefits coverages.—See premium notice enclosed." App. at 61.

On February 20, 1985, Richard Resseguie orally requested from Nationwide a reduction in UIM coverage limits from $50,000/ $100,000 to $15,000/$30,000. Following Richard Resseguie's verbal request, a Nationwide agent's secretary, in her own handwriting, issued a customer service request ("CSR") providing for a reduction in UIM coverage from $50,000/$100,000 to $15,000/$30,000.[1] Based upon this CSR, on March 5, 1985, Nationwide issued and mailed to Marian Resseguie a declaration setting forth the lower UM/UIM coverage limits on her policy. The message on the policy's declaration page read: "Your policy has been changed effective 1/28/85 resulting in a premium reduction of $11.60 which has been applied to your premium balance. We have, on your 80 Plymouth

---

1. A CSR, Nationwide's abbreviation for Customer Service Request, is a document used by Nationwide agents to inform the regional Nationwide office that a customer wishes to add to, delete from, or otherwise change his or her existing policy terms. Upon receiving direction from a customer that she wishes to change a policy term (including but not limited to coverage limits, and number or type of vehicles), the Nationwide agent or, at his direction, the agent's employee, fills out a CSR manually in the agent's office, and sends the CSR to the regional Nationwide office, where Nationwide enters the changes into the system and sends a copy of the revised declaration page to the policyholder, and a copy of the CSR showing the revised coverages to the local agent. See App. at 25.

Volare changed uninsured motorists coverage....—See premium notice enclosed." App. at 67.[2]

Marian Resseguie, the named insured, never personally requested, either in writing or orally, that Nationwide lower her UM/UIM coverage limit from $50,000/$100,000 to $15,000/$30,000, nor did she specifically authorize or direct her husband to do so. Furthermore, Nationwide never obtained a written request for the lower limits from Marian Resseguie. However, from 1985 up until 1989 Marian Resseguie received premium notices and paid premiums based on the $15,000/$30,000 UM/UIM coverage.

Richard Resseguie was killed in an automobile accident on January 2, 1989, when a drunk driver hit his car head on. Richard Resseguie was an insured person under Marian Resseguie's policy from Nationwide because he was a listed driver and because he was driving one of two vehicles insured under the policy at the time of his death. Marian Resseguie recovered the limits of the tortfeasor's liability policy; yet, the recovery was insufficient to cover her losses or the estate's loss.

Marian Resseguie notified Nationwide of her intent to request the higher UIM coverage limits on the policy.[3] After learning of Marian Resseguie's intention, Nationwide initiated this action in the district court for a declaratory judgment determining the UIM coverage limits of her policy.[4]

On February 7, 1992, the United States District Court for the Middle District of Pennsylvania entered an Order and Memorandum Opinion, 782 F.Supp. 292, in favor of the Resseguies and against Nationwide. The district court judge accepted and adopted the parties' Joint Statement of Stipulated Facts as the Findings of Fact

and declared that, at the time of Richard Resseguie's death, Marian Resseguie's car insurance policy had underinsured motorist coverage equal to the bodily injury liability coverage of $50,000 per person and $100,000 per occurrence. *See* App. at 131–32.

## II.

The United States District Court for the Middle District of Pennsylvania had jurisdiction over this action based upon 28 U.S.C. §§ 2201 and 1332(a). Nationwide is a foreign corporation organized and existing under the laws of Ohio. Marian and Larry Resseguie reside in Lewisburg, Union County, Pennsylvania. We have jurisdiction over this appeal based upon 28 U.S.C. § 1291.

The district court, as a federal court exercising diversity jurisdiction over this declaratory judgment action, was obliged to apply the substantive law of the state in which it sits. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Because there is no reported decision by the Pennsylvania Supreme Court or by any Pennsylvania court that construes § 1734, the duty of the district judge under the *Erie* doctrine was to predict how the Pennsylvania Supreme Court would interpret the requirements of § 1734 if this case were before it. *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981). The district judge appears to have made his prediction of Pennsylvania law based on the plain meaning doctrine of statutory interpretation.

We review the district judge's prediction as a determination of law, over which we exercise plenary review. *Compagnie des Bauxites de Guinee v. Ins. Co. of N. Am.*,

---

**2.** Despite its omission from the declaration page, underinsured motorist coverage, not uninsured motorist coverage, is the subject of this case and was similarly changed.

**3.** The MVFRL states that "[u]nderinsurance motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehic-

les." 75 Pa.Cons.Stat.Ann. § 1731(c) (Supp. 1992). An underinsured motor vehicle is "a motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." *Id.* at § 1702.

**4.** Defendant, Larry C. Resseguie, is the son of Richard Resseguie and is the personal representative of Richard Resseguie's estate. *See* App. at 22.

724 F.2d 369, 371–72 (3d Cir.1983). In attempting to forecast state law, we must "consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). *See also Safeco Ins. Co. of Am. v. Wetherill*, 622 F.2d 685, 688 (3d Cir.1980); *Becker v. Interstate Properties*, 569 F.2d 1203, 1205 (3d Cir.1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978).

## III.

■ Our central focus in this appeal is on §§ 1731(a) and 1734 of the MVFRL that (1) require an insurer to provide UIM coverage equal to the bodily injury coverage in its policies and (2) allow a named insured to request lower UIM coverage limits than the bodily injury coverage amounts.[5]

As a result of the enactment of the MVFRL, as of October 1, 1984, every motor vehicle liability insurance policy issued or renewed in the Commonwealth of Pennsylvania had to provide underinsured motorist coverage. Section 1731 of the Act provides, *inter alia:*

§ 1731. Scope and amount of coverage:

(a) General rule.—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are provided therein or supplemental thereto in amounts equal to the bodily injury liability coverage except as provided in section 1734 (relating to request for lower or higher limits of coverage).[6]

75 Pa.Cons.Stat.Ann. § 1731(a) (1984).[7]

Section 1734, the only exception to the mandatory provisions of underinsurance mentioned in § 1731(a), states in pertinent part:

§ 1734. Request for lower or higher limits of coverage

A named insured may *request in writing* the issuance of coverages under section 1731 (relating to scope and amount of coverage) in amounts less than the limits of liability for bodily injury but in no event less than the amounts required by this chapter for bodily injury.

75 Pa.Cons.Stat.Ann. § 1734 (Supp.1992) (emphasis added).

Nationwide argues that Marian Resseguie's signature on a request form was simply not a prerequisite to Nationwide's lowering her UIM coverage.[8] Nationwide contends that "the clear meaning of section 1734 of the MVFRL is that an insured's request for lower [underinsured] benefits *be recorded in writing.* Nowhere does the statute require that the insured *sign* that writing, or that the writing itself be actually transcribed by the insured...." The Resseguies argue that, according to § 1734, Nationwide is absolutely unautho-

---

**5.** The insured may not, however, purchase UIM coverage in an amount greater than the amount of her bodily injury coverage. *See* Pa.Cons.Stat. Ann. § 1736. The legislature has thus prevented an insured from providing greater coverage, via UM/UIM coverages, for herself and her additional insureds than the amount of coverage she provides for others injured through her negligence.

**6.** The rationale behind this circumscription is that "limits which the insured judged adequate for the protection of others was [sic] generally considered reasonable for his own protection." 3 No–Fault and Uninsured Motorist Coverage § 30.10(1) (B. Denkensohn ed. 1986) *cited in* Linda L. Rovder, *"In Good Hands" or "Bad Faith"? An Insurer's Failure to Waive Subroga-* *tion Rights in Pennsylvania Underinsured Motorist Cases*, 91 Dick.L.Rev. 981, 993 (1987).

**7.** The statutory language of sections 1731 and 1734 prior to July 1, 1990 govern this case. Act No. 1990–6 amended these sections slightly.

**8.** Nationwide also argues that the district court erred, as a matter of law, in failing to decide whether Richard Resseguie was Marian Resseguie's agent and whether his verbal request to lower the UIM coverage limits on her policy were binding upon her, as principal. Because the plain meaning of § 1734 of the MVFRL resolves the legal issue in this case, we do not need to reach Nationwide's agency claim on appeal.

rized to lower the UIM coverage without the written request of the named insured to do so.

The district court found that the statutory scheme of the MVFRL is clear. "Section 1734 requires the named insured to request in writing that the limits of her coverage be lowered. Short of a written request by Marian Resseguie for the lower coverage, ... Nationwide simply was not authorized to alter her policy." *Nationwide*, 782 F.Supp. at 294. We agree with this portion of the district court's holding.

We must then predict whether the Pennsylvania Supreme Court, given the facts of this case, would have come to the same interpretation of § 1734. Our task is made simple by virtue of the venerable plain meaning rule of statutory construction: "If the language be clear it is conclusive. There can be no construction where there is nothing to construe." *United States v. Hartwell*, 73 U.S. (6 Wallace) 385, 396, 18 L.Ed. 830 (1867). Pennsylvania's Statutory Construction Act commands the same: "When the words of the statute are clear and free from all ambiguity, the letter of it is. not to be disregarded under the pretext of pursuing its spirit." 1 Pa.Cons.Stat. Ann. § 1921(b) (Supp.1992).

The Resseguies argue, and we agree, that § 1731 is a simple statement whose plain meaning is apparent from its language. It mandates that an insurance company cannot issue a policy in the Commonwealth of Pennsylvania unless it provides UM/UIM coverage equal to the bodily injury liability coverage, except as provided in § 1734. *See also Wolgemuth v. Harleysville Mut. Ins. Co.*, 370 Pa.Super. 51, 535 A.2d 1145, 1147, *appeal dismissed*, 520 Pa. 590, 551 A.2d 216 (Pa.1988) (every motor vehicle liability insurance policy issued in the Commonwealth of Pennsylvania must provide underinsurance coverage). Nationwide does not quarrel with this interpretation of § 1731's mandate.

The Resseguies also argue, and we also agree, that § 1734's language is plain and the Pennsylvania General Assembly's intention is clear. By its terms, a named insured may lower her statutorily provided

UIM coverage limits by requesting in writing of her insurer to do so. The insurance company's obligation to issue a policy with UIM coverage in an amount equal to the policy's bodily injury liability coverage is not relieved unless it has received such a written request.

Moreover, a brief review of the history and purpose of UIM coverage evinces the standard by which to interpret § 1734 and supports our conclusion. Prior to the passage of the MVFRL, underinsured motorist coverage, unlike uninsured motorist coverage, was not required in Pennsylvania or regulated by statute. *See Votedian v. General Acc. Fire and Life Assur. Corp.*, 330 Pa.Super. 13, 478 A.2d 1324, 1327 (1984). The Pennsylvania Supreme Court in *Davis v. Government Employees Ins. Co.*, 500 Pa. 84, 454 A.2d 973 (1982), recognized the often inequitable results occasioned by the failure to require mandatory underinsured motorist coverage and noted:

> the oft cited anomaly that those in the position of [claimants who had purchased uninsured motorist coverage and who were injured by a minimally insured driver] would find themselves in a better position were the tortfeasor's vehicle totally uninsured rather than underinsured." *Gorton v. Reliance Ins. Co.*, [77 N.J. 563], 391 A.2d 1219, 1223 (N.J.1978). This anomaly, however, stems from the fact that the legislature has chosen not to require insurance coverage for those instances in which a tortfeasor's insurance is insufficient to satisfy the injured party's claim.

*Davis*, 454 A.2d at 976 (footnote omitted). The Pennsylvania General Assembly responded to and resolved this anomaly with the passage of the MVFRL. *See Wolgemuth*, 535 A.2d at 1148.

The purpose of underinsured motorist coverage is to protect the insured (and his additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate liability coverage to compensate for the injuries caused by his negligence. Thus, an insured who purchases $100,000 of liability

coverage to protect others from his negligence, must, by law, be offered the option of purchasing up to $100,000 of underinsured motorist coverage to protect himself and his additional insureds from the risk that they will be severely injured by a negligent driver who has liability coverage in an amount insufficient to fully compensate them for their injuries. *Wolgemuth,* 535 A.2d at 1149.

The Pennsylvania Supreme Court decided *Johnson v. Concord Mut. Ins. Co.,* 450 Pa. 614, 300 A.2d 61 (1973) before the General Assembly enacted the MVFRL.[9] However, the high court supplied the statutory construction scheme which remains relevant to this case:

> [o]ur determination here is in harmony with the view that the "statute evolves from public policy considerations and must be broadly and liberally construed to accomplish this purpose. Conversely, that portion of the statute permitting *rejection of uninsured motorist coverage detracts from the public policy considerations and must therefore be narrowly and strictly construed.*

*Johnson,* 300 A.2d at 64 (emphasis added).

Reduction of Marian Resseguie's UIM coverage limits in this case detracts from the public policy considerations but is permissible; just as rejection of UM coverage in *Johnson* detracted from public policy considerations. Therefore, we predict that the Pennsylvania Supreme Court would narrowly and strictly construe the provision of the MVFRL that allows an insured to request lower UIM coverage limits than are mandated by § 1731.[10]

We therefore reject Nationwide's argument that "the writing necessary to effect Marian Resseguie's request that her UIM benefits be reduced ... is the February 20, 1985 written Customer Service Request, generated as a result of Richard Resseguie's verbal instructions to the Nationwide Insurance office." We agree with the district court that to accept Nationwide's argument on the meaning of § 1734 "would defeat the purpose of the MVFRL by creating unintended ambiguities in the law. It is a very simple, clear-cut rule for an insurance company to follow—to lower the limits it must insist on a written authorization signed by the named insured." *Nationwide,* 782 F.Supp. at 294.

Furthermore, as the district court correctly pointed out, all of the cases that Nationwide cites in support of its argument are factually distinguishable. In those cases, it was undisputed that at least one of the named insureds had requested, either in writing or orally, a change in the limits. Richard Resseguie was not a named insured on Marian Resseguie's policy. In the two cited cases involving oral requests, *Nationwide Ins. Co. v. Tantorno,* No. 90–4639, 1991 WL 24921, 1991 U.S. Dist. LEXIS 2169 (E.D.Pa. February 19, 1991) and *Electric Insurance Co. v. Richardson,* No. 91–2338, 1991 WL 259054, 1991 U.S. Dist. LEXIS 17487 (E.D.Pa. December 3, 1991), the named insureds orally requested an *increase* of the bodily injury rates on a policy that the court found had been lawfully issued under § 1731. This case involves an oral request for a *reduction* in the UM/UIM coverage limits.

### IV.

For the foregoing reasons, we will affirm the judgment of the district court

---

**9.** In *Johnson,* the court construed a predecessor statute to the MVFRL, the No–Fault Motor Vehicle Insurance Act, 40 Pa.Cons.Stat.Ann. § 2000 (1971).

**10.** The rationale for the inclusion of mandatory underinsured motorist coverage in the MVFRL was not the subject of debate or specific discussion by the members of either the House or the Senate. However, James F. Mundy, as President of the Pennsylvania Trial Lawyers Association, testified before the Pennsylvania legislature on the MVFRL. Mr. Mundy co-authored a book which "offer[s] practitioners and the judiciary an instructional work to assist in making one's way through the complex legal permutations and gyrations" of the MVFRL. His interpretation of §§ 1731 and 1734 is that "[t]he insurer must provide coverage in an amount equal to the insured's liability limits *unless the insured expressly requests lower limits in writing.*" James F. Mundy *et al.,* Pennsylvania Motor Vehicle Insurance: An Analysis of the Financial Responsibility Law at 7 (1986) (emphasis added).

insofar as it is based on the requirement that a request for lower coverage be in writing by a named insured. We will, however, reject the district court's holding that an admission on the part of the named insured that she had actual knowledge of the lower coverage is legally significant.