NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2279
_____

FRANK SLUPSKI,
Appellant

v.

NATIONWIDE MUTUAL INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-18-cv-03999)
District Judge: Honorable Petrese B. Tucker
_____

Argued January 14, 2020
_____

Before: JORDAN, GREENAWAY, JR., and KRAUSE, *Circuit Judges*.

(Opinion Filed: March 3, 2020)

James C. Haggerty, Esq. [*ARGUED*]
Haggerty Goldberg Schleifer & Kupersmith, P.C.
1835 Market Street, Suite 2700
Philadelphia, PA 19103

Michael Pansini, Esq.
Adam C. Davis, Esq.
Pansini & Mezrow
1525 Locust Street, 15th Floor
Philadelphia, PA 19102
            *Attorneys for Appellant*

Bradley Vance, Esq. [*ARGUED*]
Reger Rizzo & Darnall LLP

2929 Arch Street, 13th Floor
Philadelphia, PA 19104
        *Attorney for Appellee*

———————————

OPINION*
———————————

GREENAWAY, JR., *Circuit Judge*.

Plaintiff-Appellant Frank Slupski ("Slupski") sought underinsured motorist

("UIM") coverage for an accident because he believed Defendant-Appellee Nationwide

Mutual Insurance Company ("Nationwide") was on his side. Apparently not. The crux

of this case is whether a commercial auto policy complied with the Pennsylvania Motor

Vehicle Financial Responsibility Law, 75 Pa. C.S.A. §§ 1701 *et seq.* (the "MVFRL").

An insurer—Nationwide—provided an insurance policy to a company—Phoenixville

Tire & Service Co., Inc. ("Phoenixville")—that provided liability coverage to *any* auto

but UIM coverage to only autos *owned* by Phoenixville. The MVFRL requires insurers

to provide coextensive liability and UIM coverage, unless either the rejection

requirements of § 1731 or the reduction requirements of § 1734 are met.

Based on the record before us (*i.e.*, the complaint and the insurance policy) we

find that neither the rejection requirements nor the reduction requirements of either

section were met. As such, the insurance policy provided by Nationwide failed to

comply with the MVFRL by not providing UIM coverage that was coextensive with the

---

     * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

policy's liability coverage.  The District Court therefore erred in granting Nationwide's motion to dismiss for failure to state a claim.  We will reverse the Order of the District Court and remand for further proceedings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  General Background

Slupski was injured while operating a customer's vehicle in the course and scope of his employment.  Slupski worked for Phoenixville.  Phoenixville was insured under a Commercial Auto Policy (the "Policy") by Nationwide.  Slupski pursued a tort claim against the person who rear-ended and injured him, and upon resolution of that action, Slupski presented a UIM claim to Nationwide.  Nationwide denied his UIM claim, and Slupski filed suit.

### B.  The Policy

In its "Schedule of Coverages and Covered Autos," the Policy, in part, provides liability coverage to covered autos defined by symbol "01" and UIM coverage to covered autos defined by symbol "02."  App. 33.  Symbol "01" is defined as "Any 'Auto'" and symbol "02" is defined as "Owned 'Autos' Only."  App. 55.  The limit for liability coverage is $1,000,000 and the limit for UIM coverage is $500,000.  Thus, the Policy provides liability coverage to any auto—owned or not owned—and UIM coverage to only Phoenixville's owned vehicles.

Additionally, the Policy includes a section headlined with the warning: "THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY." App. 69.  Therein, it is explained that Nationwide will "pay all sums the 'insured' is

3

legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle'. . . [and defines an insured as] [a]nyone else 'occupying' a covered 'motor vehicle'[.]" App. 69, 71.

### C. District Court Proceedings

Slupski filed a complaint against Nationwide arguing that the insurance company took the "legally erroneous and bad faith position that *only* liability coverage (but not . . . UIM coverage) was extended" to him under the Policy and that he was thus incorrectly deemed ineligible for UIM coverage. App. 10. Nationwide filed a motion to dismiss, which the District Court ultimately granted. Nationwide argued, in its motion to dismiss, that Slupski was not an insured because an insured under the Policy is defined as one in a "covered motor vehicle," and a covered motor vehicle for UIM purposes was an owned car. App. 129a–130a. Thus, because Slupski was not in an owned, and thus covered, car, he was not an insured.

The District Court agreed with this reasoning. The District Court found that Slupski had failed to state a claim upon which relief can be granted because he was not an insured under the policy, and as such Nationwide was not required to provide UIM benefits to non-insured parties. The District Court dismissed Slupski's complaint with prejudice; however, its opinion did not engage in any discussion regarding whether the requirements of either § 1731 or § 1734, and the pertinent provisions of the MVFRL, had been complied with by Nationwide. Slupski filed a timely notice of appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

As an initial matter, there was a jurisdictional defect in Slupski's original complaint. He failed to allege diversity jurisdiction. Specifically, Slupski failed to allege his own domicile, instead referencing his "residence" in the complaint. More important, he failed to allege Nationwide's state of incorporation and principal place of business. *See McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 219 n.4 (3d Cir. 2012) (finding that the use of "residents" instead of "citizens" or "domiciliaries" in a complaint was inadequate for diversity of citizenship purposes, as well as finding that the failure to identify the principal place of business and state of incorporation was also problematic). Because this faux pas is a purely technical defect, both parties agreed in their papers and at oral argument that the complaint should be amended.

Thus, pursuant to 28 U.S.C. § 1653, and as stated clearly at oral argument, the complaint is deemed to have been amended such that diversity jurisdiction exists.[1] *See, e.g.*, *Local No. 1 (ACA) Broad. Emps. v. Int'l Bhd. of Teamsters*, 614 F.2d 846, 853 (3d Cir. 1980) (noting and utilizing its authority under 28 U.S.C. § 1653, this Court permitted an amendment to the pleadings to cure a jurisdictional defect). Here, then, the District Court had diversity jurisdiction under 28 U.S.C. § 1332(a), and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) *de novo*. *SEC v. Gentile*, 939 F.3d 549, 552 n.1 (3d Cir. 2019).

---

[1] Slupksi is domiciled in Pennsylvania, and Nationwide is incorporated in Ohio, with its principal place of business also in Ohio.

5

# III. ANALYSIS

We disagree with the District Court's decision to grant Nationwide's motion to dismiss and its finding that Slupski was not entitled to receive UIM coverage under the Policy because he was not in a Phoenixville-owned car while injured. There is no question that under the Policy, because Slupski was driving a car not owned by Phoenixville, he was not an insured. But the issue is that the Policy did not adhere to the strict provisions of the MVFRL. And as per the MVFRL, UIM coverage has to be provided coextensively with the liability coverage provided, unless certain provisions are met. Here, Nationwide did not meet those provisions, and so the Policy was void to the extent it conflicts with the MVFRL.[2] This means that Slupski should have qualified as an insured because the liability coverage was provided to any auto, and UIM coverage, by default, should have been provided to any auto.[3]

---

[2] Indeed, Pennsylvania precedent shows that the failure to comply with provisions of the MVFRL renders void any policy provisions inconsistent with that statute. *See, e.g.*, *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 138 (Pa. 2019) (finding that when an insurance policy's provision was inconsistent with the "unambiguous requirements" of § 1738 of the MVFRL, the Policy created an impermissible *de facto* waiver, and the exclusions in the policy were impermissible as a matter of law); *see also Sayles v. Allstate Ins. Co.*, 219 A.3d 1110, 1127–28 (Pa. 2019) (Baer, J., concurring) (noting that in *Gallagher*, the Supreme Court of Pennsylvania "found that the insurance company's practice of including policy provisions that conflict with the clear language of the MVFRL renders those provisions invalid and unenforceable"); *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 751 (Pa. 2002) (noting that an insurer cannot use narrow policy language to "diminish the MVFRL's . . . [protections] and thereby provide coverage of a lesser scope than the MVFRL requires."). As such, an insurer cannot, by policy language alone—including the use of symbols—contradict the MVFRL's clear requirements.

[3] In his briefing, Slupski suggested that the following issue be certified to the Pennsylvania Supreme Court: "May an insurer seek to implement a waiver of . . . [UIM]

The MVFRL has very clear requirements for the provision of both uninsured motorist ("UM") and UIM coverages, the rejection of UM and UIM coverages, and the reduction of UM and UIM coverages. *See* 75 Pa. C.S.A. §§ 1731(a)-(c.1), 1734. Section 1731 "is a simple statement whose plain meaning is apparent from its language. It mandates that an insurance company cannot issue a policy in the Commonwealth of Pennsylvania *unless it provides UM/UIM coverage equal to the bodily injury liability coverage, except as provided in § 1734.*" *Nationwide Ins. Co. v. Resseguie,* 980 F.2d 226, 231 (3d Cir. 1992) (emphasis added) (citing *Wolgemuth v. Harleysville Mut. Ins. Co.*, 535 A.2d 1145, 1147 (Pa. Super. Ct.), *appeal dismissed*, 551 A.2d 216 (Pa. 1988)); *see also Ford v. Am. States*, 154 A.3d 237, 238 (Pa. 2017) (finding that unless UIM coverage is rejected in accordance with the MVFRL it must be co-extensive with liability coverage).[4]

---

coverage under the . . . [MVFRL] by policy language alone, namely through the use of a restrictive Covered Auto Symbol, without securing a Rejection of such coverage as required by the MVFRL?" Appellant Br. 1. Though that direct issue has not been addressed by the Pennsylvania Supreme Court, and is an issue of first impression before this Court, we believe that this case can be decided based on our prior holding in *Nationwide Insurance Co. v. Resseguie*, 980 F.2d 226 (3d Cir. 1992), which will be discussed in more detail below. *See also Blood v. Old Guard Ins. Co.*, 934 A.2d 1218, 1226 (Pa. 2007) (citing with approval this Court's characterization of specific MVFRL provisions in *Resseguie*). As such, certification to the Pennsylvania Supreme Court is not necessary at this time. To the extent that we are in any way forecasting "state law, we must [and will] consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Resseguie*, 980 F.2d at 230 (citation and quotation marks omitted).

[4] The mandatory offering provision of § 1731 of the MVFRL provides that: "No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, . . . unless [UM] and [UIM] coverages are offered therein or

7

The Policy that Nationwide issued to Phoenixville did not provide UM/UIM coverage equal to the liability coverage. Rather, the Policy that Nationwide created provided liability coverage to *any auto*, with a limit of $1,000,000, but provided UIM coverage to only autos *owned* by Phoenixville, with a limit of $500,000. As such, there is a clear and plain difference between the liability coverage and UM/UIM coverage that is provided. And as noted, under the MVFRL the only permissible way for Nationwide to have provided non-coextensive liability and UM/UIM coverage is for it to have adhered to the requirements of either § 1731 or § 1734. And so, the question becomes whether either the § 1731 rejection provisions or the § 1734 reduction provisions of the MVFRL was met, so that the difference in the plain terms of the Policy were permissible within the strictures of the MVFRL.

Subsection 1731(c) explains that an insurer must inform an insured "that he may *reject* underinsured motorist coverage by signing the following written rejection form[.]" 75 Pa. C.S.A. § 1731(c) (emphasis added); *see also id.* § 1731(c.1) (detailing the manner in which insurers shall print and provide rejection forms to insureds). Subsection 1731(c.1) explains: "If the insurer *fails to produce a valid rejection form*, . . . [UIM] coverage . . . under that policy shall be equal to the bodily injury liability limits." *Id.* § 1731(c.1) (emphasis added). Here, there is no evidence—based on the complaint and the Policy—that Nationwide provided any type of rejection form to Phoenixville. *Cf.*

---

supplemental thereto in amounts as provided in section 1734 . . . . Purchase of [UM] and [UIM] coverages is optional." 75 Pa. C.S.A. § 1731(a).

8

*Rarick v. Federated Serv. Ins. Co.*, 325 F. Supp. 3d 590, 593, 601, 604 (E.D. Pa. 2018) (finding an employee was not entitled to UIM coverage because his employer *signed* a UM/UIM rejection form for its insurance policy). And yet, the Policy Nationwide created did not adhere to the default that § 1731(c.1) requires in the absence of a rejection form: coextensive liability and UIM coverage. And so, the actions of Nationwide were discordant with the clear language and mandated provisions of § 1731 of the MVFRL. We therefore turn to the reduction provision of § 1734. *See Resseguie*, 980 F.2d at 231.

Section 1734 relates to how one can request lower limits of coverage, and states that: "A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury." 75 Pa. C.S.A. § 1734. Again, there is no evidence in the record that Phoenixville requested in writing the issuance of UIM coverage to be less than the liability coverage.[5] Further, we do not find that the use of a symbol—here, auto symbol "02"—and policy language alone count as a "writing" such

---

[5] We note that § 1734 clearly regards monetary limits (*e.g.*, the $1,000,000 versus $500,000 coverage limits), and not the scope of UIM coverage (*i.e.*, provision of coverage to any auto versus owned autos). As such, the issue of the monetary discrepancy in the Policy is for the District Court to consider on remand, as is the issue regarding the scope of the coverage (*i.e.*, that § 1731 of the MVFRL was not complied with). We also note that Nationwide did not argue § 1734 applied here, or that the use of covered auto symbols somehow equated to the statutorily required "writing." We nonetheless present a brief analysis of § 1734 for thoroughness, and to point to a potential way an insurance policy can permissibly be limited. Here though, we stress, if indeed § 1734 applies in this case, it seems clear that the § 1734 requirements were not met.

that the § 1734 requirement was met.[6]

In *Resseguie*, we rejected the defendant's contention that UIM coverage was appropriately lowered by a verbal request from the insured's husband. 980 F.2d at 227, 232–33. The insured—Marian Resseguie—never personally requested, in writing or orally, that the insurance provider lower her UIM coverage. *Id.* at 229. We affirmed that district court's finding that the statutory scheme of the MVFRL is clear—to adhere to § 1734, a request for lower UIM coverage must come from the named insured in writing. *See id.* at 231 ("Short of a written request by Marian Resseguie for the lower coverage, . . . [the defendant] simply was not authorized to alter her policy." (internal quotation marks and citation omitted)).

We further found in *Resseguie*, after engaging in "a brief review of the history and purpose of UIM coverage," that our interpretation of § 1734—namely, that "[t]he insurance company's obligation to issue a policy with UIM coverage in an amount equal to the policy's bodily injury liability coverage is not relieved unless it has received such a written request"—was consistent with the development of the MVFRL in Pennsylvania. *Id.* at 231–32. And as stated, here, there is no evidence of a written request from Phoenixville to Nationwide in the record (*i.e.* the complaint and the Policy). Indeed, Nationwide has neither argued nor presented any evidence from which it can be inferred

_____

[6] Thus, if the Policy were to remain as is, Nationwide would have needed to provide Phoenixville with a rejection form in accordance with § 1731 of the MVFRL to permissibly provide UIM coverage to only *owned* cars while providing liability coverage to *any* auto or there would need to be evidence of a writing from Phoenixville that complies with § 1734.

that either § 1731 or § 1734 is applicable here.[7] Even if Nationwide sought to rely on auto symbol "02" to meet § 1734's requirement, it is not a "writing" from Phoenixville to Nationwide, but a writing created by Nationwide itself.[8]

Thus, while it is true that UIM coverage may be either rejected or reduced, an insurance company must adhere to the strict and clear provisions of § 1731 and § 1734 to do so permissibly. Here, Nationwide did not do so, thus, the Policy is void and unenforceable, to the extent it conflicts with the MVFRL, and the default provision—providing UIM coverage equal to that of liability coverage—makes Slupski an insured for purposes of his suit. *See* 75 Pa. C.S.A. § 1731(c.1) ("If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits.").

---

[7] During oral argument, Nationwide also stressed that the MVFRL is premised on ownership and that by providing liability coverage to more than owned cars, it went beyond the requirements of the MVFRL. For example, at oral argument, Nationwide cited § 1786 to support its contention that only owned cars needed insurance. But Nationwide fails to address the very crux of the issue in this case: it created a policy that conflicts with the MVFRL. Section 1731 is very clear in its language regarding what must be offered and followed or what steps must be taken for proper waiver. And reading anything about "ownership" into § 1731 would require this Court to read language into the MVFRL that does not exist. *See generally* 75 Pa. C.S.A. § 1731.

[8] And though the Pennsylvania Supreme Court has not specifically discussed whether a covered auto symbol may eliminate an entire category of UIM coverage, it is clear that the highest court in Pennsylvania has found that the MVFRL's provisions must be adhered to. *See, e.g.*, *Gallagher*, 201 A.3d at 138; *see also Sayles*, 219 A.3d at 1127–28 (Baer, J., concurring); *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d at 751.

## IV.    CONCLUSION

For the reasons set forth above, we will reverse and remand the District Court's May 6, 2019 Order.

KRAUSE, *Circuit Judge*, concurring.

The Majority holds the District Court erred in granting Appellee Nationwide Mutual Insurance Company's motion to dismiss and that Appellant Frank Slupski has stated a claim for underinsured motorist (UIM) benefits under Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL). I agree and join my colleagues in both respects. I likewise agree that although Slupski's complaint was jurisdictionally deficient, those deficiencies are cosmetic and have been resolved under 28 U.S.C. § 1653.

I write separately to add two points of clarification about the policy at issue here, which—in what might be called a "non-owned-vehicle carveout"—uses coverage symbols to extend liability coverage for "[a]ny" autos but UIM coverage only for autos owned by the named insured. First, because that carveout affects the scope, not the monetary limits, of UIM coverage, it cannot be justified under 75 Pa. C.S.A. § 1734. Second, because the carveout effects a de facto waiver of UIM coverage without complying with 75 Pa. C.S.A. § 1731's express requirements for such a waiver, it is without effect. On these points too the Majority and I agree, but, mindful that we are the first federal or state court to address these issues directly, I write to explain the distinction between sections 1731 and 1734 in greater detail and to highlight the recent case law from the Supreme Court of Pennsylvania that reinforces our holding today.

## I. THE NON-OWNED-VEHICLE CARVEOUT IS NOT A SPECIFIC-LIMITS REQUEST UNDER SECTION 1734

The MVFRL provides that "[a] named insured may request in writing" UIM coverage in an "amount[] equal to or less than the limits of liability for bodily injury." 75 Pa.

C.S.A. § 1734. As we all agree, *see* Maj. Op. 9 n.5, section 1734 relates only to the monetary limits, and not the scope, of UIM coverage. And because the non-owned-vehicle carveout creates an asymmetry in the scope of liability and UIM coverage, it cannot be defended under section 1734.[1] I agree and lay out the building blocks of that reasoning to offer guidance for future cases.

I begin, as always, with the text. *Rokiske v. Klemm*, 890 F.3d 422, 424 (3d Cir. 2018) (en banc), *aff'd*, 140 S. Ct. 355 (2019). The MVFRL has three components relevant here: (i) a mandatory offering provision, which requires insurers to offer UIM coverage in every "motor vehicle liability insurance policy," 75 Pa. C.S.A. § 1731(a); (ii) an express waiver provision, allowing insureds to "reject" UIM coverage by signing a form whose contents, type, and location are specified in the statute, *id.* § 1731(c)–(c.1); and (iii) a specific-limits provision, giving insureds the option to "request in writing" UIM coverage "equal to or less than" the liability "limits," *id.* § 1734. Together, these components yield a straightforward rule: Insurers "must provide []UIM coverage equal to the bodily injury liability coverage, unless the insured validly rejects []UIM coverage or validly requests

---

[1] As the Majority notes, its references to whether section 1734's "request in writing" requirement has been met relate not to the non-owned-car exclusion but rather to a distinct "monetary discrepancy in the Policy," Maj. Op. 9 n.5, namely that the coverage schedule purports to place a $500,000 limit on UIM coverage as compared to the $1 million liability limit. Slupski's complaint claimed that the reduction to $500,000 was invalid, but the District Court did not address that claim, so our majority opinion likewise leaves it open "for the District Court to consider on remand," *id.* Although it seems unlikely the writing requirement was met "[b]ased on the record before us," *id.* at 2, the District Court on remand, considering any testimony or evidence it may allow, will need to confront the rich body of case law in which Pennsylvania courts have debated the nature of the writing requirement, *see, e.g.*, *Orsag v. Farmers New Century Ins.*, 15 A.3d 896, 900–01 (Pa. 2011); *Blood v. Old Guard Ins. Co.*, 934 A.2d 1218, 1219–20, 1226–27 (Pa. 2007). That issue is left for another day.

lower limits of coverage pursuant to section 1734." *Weilacher v. State Farm Mut. Auto. Ins. Co.*, 65 A.3d 976, 983 (Pa. Super. Ct. 2013).

The interaction between sections 1731 and 1734 reveals how the Pennsylvania legislature intended that rule to operate in practice. The two sections must be "read *in pari materia* . . . as part and parcel of the MVFRL's comprehensive scheme for promoting financial responsibility in the motoring public and, more particularly, as relating to the provision of UIM coverage within the context of such scheme." *Lewis v. Erie Ins. Exch.*, 793 A.2d 143, 149 (Pa. 2002). By its terms, section 1731 addresses three aspects of UIM coverage: (i) *availability*, i.e., UIM benefits must be "offered"; (ii) *scope*, i.e., UIM coverage must be offered wherever there is "liability" coverage; and (iii) *amount*, i.e., the specific "limits" of UIM coverage. 75 Pa. C.S.A. § 1731(a). Section 1731 also states that section 1734 relates to only one of those aspects: "request[s] for *lower limits*" of UIM coverage. *Id.* (emphasis added). Section 1734 itself reinforces that distinction, allowing insureds to request "coverages under section 1731 (relating to availability, scope and amount of coverage) in *amounts equal to or less than the limits* of liability for bodily injury." *Id.* § 1734 (emphasis added). Tellingly, section 1734 allows reductions only in the "amount[]," *id.*, meaning "the total number or quantity," of insurance coverage for injuries caused by underinsured motorists, *see Amount*, Merriam-Webster's Collegiate Dictionary (10th ed. 1997), a restriction reinforced by section 1731(a)'s use of the adjective "lower" in describing the specific-limits request provision. Under the MVFRL's plain terms, therefore, section 1734 is a limited "exception to" section 1731's requirements, *see Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 230 (3d Cir. 1992), and it applies only with respect to the monetary *limits* of UIM coverage—not the availability or, as relevant here, the *scope* of coverage.

3

Pennsylvania case law bears out this reading. In *Lewis*, for instance, the Supreme Court of Pennsylvania differentiated "situations in which outright waiver/rejection is attempted," which fall under section 1731, from "requests for specific limits," which fall under section 1734. 793 A.2d at 153. A waiver of UIM coverage, it explained, implicates the legislature's desire to "confer explicit warning upon consumers who cho[o]se to drive without any financial protection from injury on account of . . . underinsured motorists." *Id.* But those concerns dissipate in the specific-limits context, where there is "not only the signature of the insured" but also "an express designation of *the amount* of coverage requested, thus lessening the potential for confusion." *Id.* (emphasis added). Given the differences in "character and degree" between waiver and a specific-limits request, *id.*, Pennsylvania courts have cautioned against "convert[ing] an invalid section 1731 waiver form into a valid section 1734 election of lower UM coverage limits," particularly as doing so would violate "the stricter-than-traditional rules of waiver afforded to purchasers of insurance," *Nat'l Union Fire Ins. Co. v. Irex Corp.*, 713 A.2d 1145, 1152 (Pa. Super. Ct. 1998). Indeed, the parties have not cited, and research has not revealed, any case in which a restriction on the scope of UIM coverage was approved as a specific-limits request under section 1734.

Given the limited purpose of section 1734, it is clear why the non-owned-vehicle carveout falls outside that section's purview. The carveout denies UIM coverage altogether based on the nature of the activity in which the injured claimant was engaged—here, driving a car owned by a customer, rather than Phoenixville Tire, in the course of his employment. The only sensible way to interpret that carveout is as affecting the "scope," 75 Pa. C.S.A. § 1731, and not the "amount[] . . . [of] the limits," *id.* § 1734, of UIM coverage. As

4

such, the carveout cannot be justified as a specific-limits request—which is almost certainly why, as the Majority points out, Nationwide did not defend it as such.

## II. THE NON-OWNED-VEHICLE CARVEOUT OPERATES AS A DE FACTO WAIVER OF UIM COVERAGE

What remains is the question of how to understand the non-owned-vehicle carveout within the framework of the MVFRL. Relying on recent guidance from the state supreme court, I would make explicit what the Majority leaves implicit: namely, that the carveout effects an impermissible de facto waiver of UIM coverage.

To begin, I join my colleagues in rejecting the District Court's circular conclusion that Slupski is not entitled to UIM benefits because he was not defined as an "insured" for purposes of the policy's UIM provisions. There is no dispute that the policy's coverage schedule provided liability insurance for "[a]ny" auto but UIM coverage only for autos owned by Phoenixville Tire. App. 33, 55. Yet that cannot be the end of the matter for purposes of the MVFRL; otherwise, the statute would require UIM benefits only where they had already been extended by grace of the insurer. The question we confront, rather, is whether the asymmetry between UIM and liability coverage produced by the policy's coverage schedule is consistent with the MVFRL. It is not.

The Majority rests that conclusion on our decision in *Resseguie*, which I agree provides helpful guidance on the nature of the MVFRL in general and the interaction between sections 1731 and 1734 in particular. But *Resseguie* goes only so far. After all, that case involved the narrow question whether a named insured's spouse could validly reduce the limits of her UIM coverage through a verbal request, *see* 980 F.2d at 227; it did not involve, and therefore gave us no occasion to address, any asymmetry in the scope of UIM coverage as compared to liability coverage. And *Resseguie*'s statement that insurers must provide

5

UIM coverage "equal to the bodily injury liability coverage, except as provided in § 1734," *see* 980 F.2d at 231, is incomplete, as it ignores section 1731(c) and (c.1)'s rejection procedure and elides the key distinction between waiver and specific-limits requests.

Fortunately, however, our holding today finds substantial additional support in recent opinions of the Supreme Court of Pennsylvania—to which we must look to "predict how [that] court would resolve the issue," *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 391 (3d Cir. 2012) (alteration in original) (citation omitted). In three recent cases, Pennsylvania's highest court has made clear than insurers cannot avoid the MVFRL's express requirements through policy language in individual insurance agreements. Those opinions dictate our holding today.

The first, *Prudential Property & Casualty Insurance Co. v. Colbert*, 813 A.2d 747 (Pa. 2002), involved an injured claimant who sought UIM benefits under his parents' policy. *Id.* at 749. Under the MVFRL, Colbert was an "insured" because he "resid[ed] in the household of the named insured[s]." *Id.* (quoting 75 Pa. C.S.A. § 1702). But under the narrower terms of the policy, he was not an "insured" because he was not driving a "covered" vehicle. *Id.* at 750. The court held that the policy's "more restrictive definition of 'insured' is in conflict with the MVFRL" and accordingly "must yield, even though it is clear and unambiguous." *Id.* at 751. And it rejected the insured's argument to the contrary in strong terms: "Nothing in the MVFRL permits [an] insurer to diminish the MVFRL's definition of 'insured' and thereby provide coverage of a lesser scope than the MVFRL requires." *Id.*

The court resolved a similar conflict between a policy provision and the MVFRL in *Gallagher v. GEICO Indemnity Co.*, 201 A.3d 131 (Pa. 2019). The MVFRL provision at issue was the presumptive guarantee of "stack[ing]" of UIM benefits across multiple

6

insurance policies. *See id.* at 132–33. That stacking provision operates much like section 1731: It establishes a default coverage condition and allows insureds to waive that coverage only by signing a statutorily specified form. *See* 75 Pa. C.S.A. § 1738(a)–(b), (d). In *Gallagher*, the question was how that provision interacted with an insurance policy's "household vehicle exclusion," which eliminated UIM coverage for injuries involving a vehicle owned or leased by the insured or a relative but not covered under the policy.[2] 201 A.3d at 132–33. The court held that the exclusion was "inconsistent" with section 1738's "unambiguous requirements" because it "acts as a *de facto* waiver of stacked UIM coverage" without complying with the "statutorily-prescribed . . . waiver form." *Id.* at 138. And because the exclusion "conflict[ed] with [the MVFRL's] mandates," it was "invalid and unenforceable."[3] *Id.* at 137.

---

[2] Pennsylvania courts have spilled much ink assessing whether and to what extent such policy "exclusions" are consistent with the MVFRL and the public policy reflected therein. *Compare, e.g.*, *Burstein v. Prudential Prop. & Cas. Ins. Co.*, 809 A.2d 204, 205–08 (Pa. 2002) (upholding a "regularly used, non-owned car" exclusion), *with, e.g.*, *Heller v. Pa. League of Cities & Municipalities*, 32 A.3d 1213, 1221–25 (Pa. 2011) (holding "that a worker's compensation exclusion in an employer-sponsored insurance policy violates public policy and is, therefore, unenforceable"). We need not address that case law here because the non-owned-vehicle carveout was not listed among the policy's exclusions, and Nationwide has not defended it as such.

Our majority opinion must be understood against this backdrop. Thus, when we say the "only permissible way" to "provide[] non-coextensive liability and []UIM coverage" is by "adher[ing] to the requirements of either § 1731 or § 1734," Maj. Op. 8, we do not call into question policy exclusions that apply to UIM but not liability coverage, for that would conflict with cases like *Burstein*, whose approach the Supreme Court of Pennsylvania recently affirmed in *Williams v. GEICO Government Employees Insurance Co.*, 32 A.3d 1195, 1197, 1205–09 (Pa. 2011). Rather, implicit in our approach is that the carveout here cannot be classified as a coverage exclusion—or at least that Nationwide has waived an argument to that effect.

[3] Before argument, we called for supplemental briefing addressing, among other things, the effect of *Gallagher*. Nationwide's only real response was that "the MVFRL

Finally, in *Sayles v. Allstate Insurance Co.*, 219 A.3d 1110 (Pa. 2019), the state supreme court again confronted a conflict between statutory text and policy language. This time, the issue was a policy's requirement that any insured seeking first-party medical benefits "submit to an independent medical exam whenever the insurer requires," *id.* at 1112, a narrower and more insurer-friendly process than the MVFRL provision allowing for such an exam "only . . . upon motion for good cause shown," *id.* at 1123 (quoting 75 Pa. C.S.A. § 1796(a)). The court once again rejected the insurer's attempt to restrict or evade the MVFRL's "carefully crafted" requirements, *id.* at 1124, reasoning that "[a]llowing such a contractual circumvention of Section 1796(a) would create a bifurcated scheme of automobile insurance coverage" and thereby "undermine" the legislature's objective of "provid[ing] a comprehensive and uniform statutory framework which ensures that victims of accidents are adequately compensated for a harm they suffer while traveling on Pennsylvania highways," *id.* at 1124–25. The policy's medical examination provision was therefore in "manifest[] conflict with, and . . . repugnant to," the MVFRL, and could not be enforced against the insured. *Id.* at 1126–27.

*Colbert*, *Gallagher*, and *Sayles* instruct that an insurer cannot use insurance policy language to sidestep the MVFRL's requirements, regardless whether those requirements are substantive (e.g., the definition of "insured" under section 1702, *see Colbert*, 813 A.2d

---

required that an insurance carrier allow an individual to stack coverage on multiple insurance policies," whereas nothing in the MVFRL "required [Slupski's] employer to provide or offer UIM coverage to its employees while occupying vehicles which the employer did not own." Appellee's Suppl. Letter Br. 4–5. But as explained in greater detail below, that argument misses the point: Phoenixville Tire was not required to purchase a policy extending liability coverage to the operation of "[a]ny" auto in the course of its business, but once it did, Nationwide was required to offer coextensive UIM coverage and could not restrict the scope of that coverage without complying with section 1731(c) and (c.1).

at 750–51) or procedural (e.g., for waiving stacked UIM coverage under section 1738, *see Gallagher*, 201 A.3d at 137–38, or for demanding that an insured undergo a medical exam under section 1796, *see Sayles*, 219 A.3d at 1123–24). As the Majority recognizes, *see* Maj. Op. 6 n.2 ("[A]n insurer cannot, by policy language alone[,] . . . contradict the MVFRL's clear requirements."), that lesson resolves this appeal. The coverage symbols in Phoenixville Tire's policy produce an asymmetry in the scope of UIM coverage as compared to liability coverage. In doing so, the policy encroaches on an area explicitly governed by the MVFRL: the presumptively coextensive extension of UIM coverage, *see Resseguie*, 980 F.2d at 231, and the "carefully crafted" requirements, *Sayles*, 219 A.3d at 1124, for waiving UIM coverage under section 1731(c) and (c.1). It manifestly conflicts with the MVFRL because it departs from that presumptive condition without complying with the express requirements for doing so. It must therefore yield to the MVFRL's requirement of an express waiver.

*     *     *

I conclude with an additional comment on our rejection, Maj. Op. 11 n.7, of Nationwide's principal argument: that the MVFRL does not require UIM coverage to be extended "to employees in non-owned vehicles." *E.g.*, Appellee's Br. 6. Nothing in section 1731's mandatory offering or express waiver provisions gives rise to a distinction based on ownership. When pressed at oral argument, Nationwide fell back on 75 Pa. C.S.A. § 1786, a distinct MVFRL provision imposing insurance obligations on the owners of motor vehicles. But section 1731 makes no reference to section 1786, and Nationwide could not identify a single source of law in support of the proposition that section 1731's mandatory offering requirement is implicitly limited to statutorily required liability coverage. "[W]e must accept that when the General Assembly selects words to use in a statute, it has chosen

9

them purposefully," and "[w]e cannot change those words to reflect our own public policy concerns . . . [or] edit them based on the supposition that we know what the General Assembly meant to say when it said something different." *Commonwealth v. Scolieri*, 813 A.2d 672, 673 (Pa. 2002). Contrary to Nationwide's argument, UIM coverage "must be offered to all insureds and be explicitly waived by them," *Ins. Fed'n of Pa., Inc. v. Commonwealth*, 889 A.2d 550, 554 (Pa. 2005), wherever there is liability coverage—regardless whether that coverage is statutorily mandated or purely optional. And because there was no explicit waiver consistent with section 1731(c) and (c.1) here, my colleagues and I agree that Slupski has stated a claim under the MVFRL and that the District Court erred in dismissing his complaint.